CHARLES S. N. NEWELL et al. v. ELIAS NEWELL.

1. PLEADING: DEMURRER OVERRULED, WHERE THE PLEADING IS DIVISIBLE AND SUFFICIENT IN PART.—If the defendant demur to the whole declaration, part of which is sufficient, and the residue not, the demurrer will be overruled, if the matters alleged be divisible in their nature.

2. SAME: DECLARATION IN REPLEVIN DIVISIBLE.—A declaration in replevin, for

the recovery of a chattel, and for damages for the wrongful taking or detention, is divisible; and hence, a demurrer to the whole will be overruled, if it be sufficient, so far as it relates to the specific recovery of the chattel, although defective in reference to the damages claimed.

3. SAME: REPLEVIN, DECLARATION AND AFFIDAVIT MUST CORRESPOND.—If the affidavit, upon which an action of replevin is founded, set out only a wrongful detention, it will be improper to allege, in the declaration, both a wrongful detention and a wrongful taking; for the damages, which might be recovered, are liable to be increased by circumstances of aggravation attending a wrongful taking.

4. RECORD: REPLEVIN: AFFIDAVIT IN, PART OF RECORD.—The affidavit, which is the foundation of an action of replevin, is a part of record.

5. REPLEVIN, FOR WRONGFUL DETENTION: WHEN PREVIOUS DEMAND UNNECESSARY.— Where the defendant, in an action of replevin, alleging a wrongful detention of property, sets up title in himself, it is unnecessary for the plaintiff to make a demand for restitution before the institution of his suit.

6. SAME: PLEADING: UNDER GENERAL ISSUE IN REPLEVIN, AFFIRMATIVE MATTER MAY BE PROVEN.—The defendant, in an action of replevin, may, under the general issue, introduce in evidence the award of arbitrators, settling the title and right of possession to the property in dispute.

7. FRAUDULENT CONVEYANCE: DONOR BOUND BY, WHERE DONEE IS INNOCENT OF THE FRAUD.—Where the donee is innocent of the fraud, the grantor, in a deed of gift, made for the purpose of defeating the rights of his creditors, will not be permitted to impeach or deny the title thus conveyed.

8. GIFT: DELIVERY: ESTOPPEL: DONOR ESTOPPED TO DENY DELIVERY ADMITTED UNDER HIS SEAL.—As a general rule, a gift of a chattel is never complete without a delivery of possession; but, where the donor acknowledges, under his hand and seal, that a delivery was in fact made, he will be estopped to deny the delivery thus admitted, especially when the deed has been regularly recorded.

9. EVIDENCE: A PARTY CANNOT INTRODUCE HIS OWN ADMISSIONS.—A party cannot introduce in evidence his own statements, contained in his answer, in a suit in equity between the same parties, and in reference to the same subject-matter.

IN error from the Circuit Court of Jasper county. Hon. John Watts, judge.

This was an action of replevin, by Elias Newell, against Darrell Y. Newell and C. S. N. Newell, to recover seventeen slaves. The affidavit stated that the slaves were wrongfully detained by the defendants; but the declaration alleged both a wrongful taking and detention.

The defendants craved oyer of the affidavit, and demurred to the declaration, upon the ground that it alleged a wrongful detention and taking. This demurrer was overruled by the court, and the defendants then, under leave, answered, denying generally all the allegations of the declaration.

During the progress of the trial, the defendants offered to prove that the dispute in reference to the title of the slaves, between the plaintiff and Darrell Y. Newell, had been by them referred to arbitrators, and that their award was, that the slaves should be equally divided between them. To the introduction of this proof, the plaintiff objected, upon the ground that the arbitration had not been pleaded. The court sustained the objection, and the defendants excepted. The defendants then asked leave to amend, by pleading the arbitration, but the court refused the permission asked, and the defendants excepted.

The instructions given on behalf of the plaintiff, in reference to the deed of gift from the plaintiff to Darrell Y. Newell, were as follows:—

"1. If the jury believe, from the evidence, that the plaintiff intended to give the slaves, in controversy, to defendant, Darrell Y. Newell, and that plaintiff did not deliver the possession of said slaves, actual or constructive, to the defendant, then the gift was void; and if the jury so believe, they will find for the plaintiff."

"2. To constitute a valid gift, the donor must part with the entire possession, dominion, and control of the property; and the statements of Darrell Y. Newell, sworn to in his bill in chancery, that he did not obtain possession of said property, and knew nothing of the gift, is evidence that there was no delivery of possession of said property to said defendant."

"4. Slave property is capable of actual delivery; and, to pass title to slaves, by deed of gift, there must be a delivery of possession from the donor to the donee, either actual or constructive."

"5. If the plaintiff did not, when the deed was executed, deliver possession of the slaves, either actual or constructive, his statements afterwards, that the slaves were Darrell Y. Newell's, are not sufficient to uphold defendant's title to them."

"7. If the plaintiff retained possession of the slaves after the defendant became of age, and went to live by himself, for a number

of years, that fact would destroy any presumption arising from the fact, that the deed of gift was made when the defendant was a minor and residing with the plaintiff, that the property was delivered to him when the deed was made."

It may be also necessary to state that the defendant, C. S. N. Newell, claimed an interest in the slaves, under a contract with his co-defendant, Darrell Y. Newell.

The other facts, necessary to be stated, will be found in the opinion of the court.

The plaintiff below had verdict and judgment, and the defendants sued out this writ of error.

*Daniel Mayes* and *George L. Potter*, for plaintiffs in error.

There are several reasons why this judgment should be reversed.

1. The action is replevin, and the charge is a *wrongful* taking and detention. In such a case there must be shown both a wrongful taking and detention; and there is nothing to show wrong either in the taking or detention. On the contrary, the proof is positive, as to about half the slaves sued for, that they were delivered to the defendant, Darrell, "*by the consent*" of plaintiff. It was, in effect, a delivery of the possession to him by the plaintiff himself; and hence, the taking could not have been "wrongful" as to the plaintiff. See evidence of Garvin and Cook. Cook proves that in 1855 there was an arbitration as to these slaves, between Elias and Darrell, an award made, and a division and delivery accordingly. Ib.

So, as to the alleged wrongful detention. The proof shows no previous demand by plaintiff for the return of those slaves; and as they were delivered by consent of plaintiff, and he had not revoked before suit, Darrell may well retain them under that consent. It is vain to say this suit is a demand, and that so the detainer is wrongful; for the statute does not authorize such a suit at all, until such wrong has been done.

The same may be said of the other slaves. No previous demand is shown, no wrongful detention proved. On the contrary, the statement of Charles Newell, which is proper proof as part of a conversation called for by plaintiff, shows that he purchased *at the request of plaintiff*. Jacobs, 45, 46.

2. Previous to this suit, Darrell Newell had sued the plaintiff, Elias Newell, in chancery, for these slaves. And in this action, the plaintiff offered in evidence against both defendants the bill thus filed by Darrell, and also the answer of the plaintiff thereto. To this answer the defendants objected, but the court overruled the objection, and permitted the plaintiff to read *his own answer* in the former suit against both of these defendants. That answer, regarded as evidence, must have had a controlling influence on the verdict; it nullified the deed of gift under which Darrell claimed. This error is too manifest for argument. The decree was also read, but that is immaterial, as it was a mere dismissal for want of prosecution.

3. We now consider the main point of the controversy. On the 27th December, 1826, the plaintiff, Elias Newell, executed, under his hand and seal, a deed of gift, conveying, in consideration of natural love and affection for *his son*, Darrell Newell, to said Darrell, the older of the slaves in controversy, and of whom the residue are the increase. This deed contains a general warranty, and recites that possession had been delivered, *by delivering one negro* "in the name of the whole." It recites that Darrell was thus put "in full possession." This deed was duly acknowledged and recorded. Holliman proves that Darrell was then about thirteen years old, and lived with his father, the donor, as he continued to do for several years thereafter. He cannot speak as to the fact of delivery, but says Darrell was not present when the deed was acknowledged. He proves the expressed intent of plaintiff to give the slaves to Darrell.

Plaintiff now denies the fact of a delivery of possession, and insists that the gift was, therefore, incomplete and null. We say he is estopped, by the recital and admission of his own deed, to deny the fact of delivery.

A delivery of part as and for the whole is good. Delivery may be actual or constructive; it may be symbolical; and perhaps the mere delivery of the written evidence of the gift, the deed itself, would be sufficient. 7 S. & M. 428.

Mere delivery of the deed of gift, passes title the same as if the property had been delivered. *McRae* v. *Pegues*, 4 Ala. 158.

Where, as here, a child lives with his parent, the possession of the father is the possession of the child; and a gift of the former

to the latter, so living with him, is good, without any delivery. *Dodd* v. *McGrow*, 3 Engl. 107 ; 1 Bailey, 585 ; *Danley* v. *Rector*, 5 Engl. 224 ; *Davis* v. *Davis*, 1 Brevard, 371 ; 10 Johns. 295, 296.

It has been said that, in such a case, " the law dispenses with actual delivery." 6 Engl. 249 ; U. S. Annual Dig. 1853, p. 373, § 24.

Deed of gift to a child is good, without delivery of the property. *Banks* v. *Marksberry*, 3 Littell, 275.

This court sustained a deed of gift of personalty, without any proof of delivery at all, and where the donor had manifestly retained the possession. *Wall* v. *Wall*, 1 George, 97.

In *Young* v. *Young*, 3 Cushman, 47, it was held that, where a minor lives with his father, and it appears that the latter intended to bestow a gift to his child, the law will presume a formal delivery, in the absence of proof to the contrary.

It is there also held that, in such a case, the possession of the parent is the possession of the child.

Registration of the deed of gift is equivalent to a delivery of the property. *Howard* v. *Samples*, 5 Dana, 306.

The fact of delivery was formerly a great point in controversies relative to sales of personal property ; but no such delivery is necessary here. 13 S. & M. 615 ; 2 George, 259.

And in courts, where delivery was held necessary to perfect a sale of chattels, it would be a matter of course to hold a delivery indispensable to a valid gift ; but a change of the rule should apply equally to both cases. It has been held, and by this court, that registration of a deed of trust of personalty is equivalent to a delivery of the property ; and it would seem that recording deeds of gift should have like effect.

Where the gift is by deed, it is good against the donor, although the latter retains possession. *McCutchen* v. *McCutchen*, 9 Port. 650.

A mere declaration of a gift, with intent to give to an infant, is sufficient. *Hannah* v. *Sparks*, 4 Har. & John. 310.

There is good sense in the decisions which hold that no delivery is necessary where a parent makes a gift to an infant child residing with him. Delivery is said to be necessary, because the donor must part with all dominion over the property. But, in the case under

consideration, that is wholly impossible; and an actual · delivery can, in point of fact, make no possible difference. Suppose the parent to make a delivery, with the utmost formality, to his infant child, is his dominion, possession, or control over the property, in point of fact, altered in the slightest degree thereby? Plainly not; for he has, notwithstanding, possession and control of the donee, as well as of the gift.

Hence, we conclude, that the deed of gift, made by Elias Newell to his son Darrell, while a minor, and residing with him, was operative and valid to pass the property; and that the subsequent possession of Elias was the possession of Darrell; and, if so, the 1st, 2d, 4th, 5th, and 7th instructions given for plaintiff are erroneous.

If it be said there was no delivery of the deed, the foregoing considerations furnish the answer; and, besides, a delivery for registration is sufficient to prove delivery of the deed. 9 S. & M. 387; 13 Ib. 22.

Plaintiff, Elias Newell, has repeatedly admitted, since the deed of gift, that these slaves belonged to his son Darrell. Bremer says that, about seventeen years ago, Elias said the sheriff was about to levy on one of the women named in the deed, and would have done so if Darrell had not prevented. That when Elias was going to Mobile, with his wife and son, he brought the same woman, and delivered her to witness, as the property of Darrell. 37.

Craven proves that, in 1855, plaintiff said the sheriff had taken "the last thing that he had," and could not sell these slaves. 38.

Garvin proves that, at the request of Charles, he informed plaintiff that the sheriff was about to levy on his slave John; and the plaintiff replied, that the sheriff might sell John, but "that he had no other property subject to execution. That Darrell had half of the slaves he had had; and that the negroes which he had then were also Darrell's, and he should have them." That plaintiff made no exception, but said, positively, "all the negroes," alluding to the negroes in controversy, "were Darrell Y. Newell's." This was after the division by the arbitrators, hereafter mentioned—pp. 39, 40; and the same witness says that division was in 1855. p. 41.

Cook proves the same full admissions, made by Elias, in 1855, that these slaves belonged to Darrell. 43.

Walley proves that Darrell had possession of Charlotte and three children, about eight years ago. 36, 37.

The plaintiff proved he had possession of the elder of the slaves in 1818, and after at times. Wheeler knew Ned, Charlotte, Dicey and Kate, from 1828; and they were, so far as he knew, in possession of plaintiff until the spring of 1855. 25.

Wyde proves about the same; and says that, in 1854, he saw thirteen negroes, not describing them, in possession of plaintiff. 26.

But there is nothing to show he ever, until recently, claimed adversely to his son. On the contrary, he repeatedly, through a series of years, admitted all these slaves to be the property of that son; and he continued those declarations up to 1855.

The bill in chancery of Darrell, offered in evidence by plaintiff, shows the fact of a symbolical delivery of the slaves to him; the hand of one being placed in his hand in token of ownership; but it shows he was then of tender years, and ignorant of its purpose and meaning. That, for a long time, he was ignorant of the existence of the deed itself, as he might well be, considering his youth. He lived with his father until his marriage, and, as that bill shows, then left the slaves with his father to assist him; and the father seems gratefully to have accepted the favor, until, about 1855, he conceived the idea of repudiating the gift, and of defrauding his son. But the facts are conclusive against him. The deed of gift, unopposed by any hostile possession, and continued by his repeated admissions, must stand.

An attempt may be made to prejudice the case, by showing that Charles had secreted the slaves in his crib; but the proof shows that he had good cause to do so; that the sheriff was accompanied by armed men, who spoke of running and selling the slaves; and that an attachment had, shortly before, been levied on them, and the sheriff had refused to Charles the privilege of bonding them, as he had the right to do. The sheriff says that, on this occasion, Charles produced the slaves so soon as he was informed that he could bond them.

4. We have noted errors in some of the instructions. The second charge, for plaintiff, is also erroneous, in this: it charges on the weight of evidence. It erroneously assumes that Darrell, by his bill in chancery, admitted there was no delivery, and declares that

that admission, and his statement of his ignorance of the existence of the deed, are evidence there was no delivery! This charge is also objectionable, because it declares this alleged admission of Darrell to be proof against Charles.

The seventh charge, for plaintiff, is wrong; it declares that the continued possession of plaintiff, after Darrell became of age, and went to live by himself, is sufficient to rebut the presumption of a delivery at the date of the deed. This ignored the admission of a delivery contained in the deed, and which plaintiff was estopped to deny; it ignored the repeated subsequent admissions of plaintiff, that Darrell was owner; and ignored the law, that if such possession was not adverse, no adverse presumption would arise from it. It also assumed to decide upon the effect of the evidence.

5. The proof shows that, in 1855, the plaintiff asserted a claim, of some sort, to this property; and he and Darrell, by mutual consent, referred the matter to arbitration. The arbitrators made their award, and directed an equal division. They made that division, and each party took his proper share. The whole matter was thus done and completed. True, plaintiff, pending the division, said he would, notwithstanding, get all, if the law permitted; but it does not appear that this was said to or known to Darrell; and it is plain plaintiff could not thus defeat a settlement he had consented to, and permitted to be perfected. Hence the third charge, for plaintiff, was wrong.

The sixth charge, for plaintiff, was also wrong. It assumed that, if the compromise being made, Darrell afterwards fraudulently got possession of the share of plaintiff, then the compromise was null. Whereas, no subsequent act could have that effect, and especially not, unless it was based on a repudiation of the compromise. Darrell had, therefore, a full title by the award, &c., to half the slaves, whether his original claim was good or not. But it is otherwise as to plaintiff. He comes repudiating that award, and claiming the whole; and cannot, therefore, claim under it. Besides, he afterwards admitted that Darrell was owner of all these slaves.

6. The demurrer to the complaint should have been sustained. It counts on both a wrongful taking, and a wrongful detention; whereas, the preliminary affidavit, and the writ, were for a wrongful

detention only.    A plaintiff cannot thus enlarge his demands, after suit brought.

7. The court erred in refusing a continuance to defendant.    The recital of the reasons for such refusal is no proof the facts were so.

We ask a reversal and a new trial.

*W. S. Yerger, Jr.*, for defendant in error.

The first question to be considered in this case is, whether the deed of gift from Elias Newell to Darrell Y. Newell, one of the plaintiffs in error, was ever delivered.

The deed itself recites that Darrell Y. Newell is put in possession of the property mentioned in the deed, by the delivery of one negro at the time of the " delivery and sealing" of the deed.

This deed purported to transfer three of the negroes, now in controversy, to wit : Ned, Dice, and Charlotte.

It is admitted that delivery is essential to the validity of a deed ; but, the question which arises here, is, whether there has been a sufficient delivery.

1. Before, however, adverting to the deed of gift, we will, in the first place, show that, admitting for argument sake, the deed is valid, still the title is in Elias Newell.

The record shows that Elias Newell has been in possession from 1826, the time the deed was executed, until 1854, and his possession was adverse for more than six years, but clearly so from 1847, the time he filed his answer ; he has, therefore, a title by operation of the Statute of Limitations.

It may be said that Darrell was a minor, and that the statute does not commence to run until the disability is removed.    It is true that the proof· shows that he was a minor at the date of the execution of the deed ; that he was only thirteen years old.

His disability was removed, therefore, eight years thereafter, or in the year 1834.    In the year 1839, Elias Newell removed from Perry county to Jasper county, and, it seems, took all the negroes along with him.    Darrell Y. Newell, it does not appear, accompanied him.

So, from 1834 to 1854, we find Elias Newell in the quiet and peaceable possession of the negroes, without any objection on the part of Darrell Y. Newell.    It matters not, then, whether the deed

of gift was delivered or not. More than six years has transpired since the disability was removed.

But, again, the answer of Elias Newell, in the chancery suit, is evidence of an adverse holding on his part, as to all the negroes. An adverse holding must be proved by the acts of the adverse holder; for, it is only from the time that his acts evince an adverse holding, that the statute begins to run; and these acts, as expressive of his intention, may be as well proved by his answer as any other evidence; for, in any event, evidence of his adverse holding proceeds from himself.

So, that the general rule, that an answer is not evidence for the same party in another suit, does not apply.

But, it may be said, that Darrell Y. Newell was the inmate of Elias Newell's family for a great number of years; and that, therefore, he was in possession, as much so as Elias Newell himself. But the record showed that he left the house of Elias Newell when he was married; and the bill of complaint, in the chancery suit, admits that he was married in 1841. So, from that time until 1854, he was out of possession.

The bill of complaint was not objected to, either generally or specially; and, in fact, it is evidence if sworn to. See 4 Alabama.

But it makes no difference in this case. The plaintiffs in error in the court below, excepted only in general terms to the answer and decree.

General objections to the admission of documentary evidence, overruled in the court below, are entitled to but little consideration in the High Court of Errors and Appeals. *Routh* v. *Agricultural Bank*, 12 Smedes & Marshall, 161; *Rabe* v. *Tyler*, 10 Ib. 444.

The decree would, of course, be admissible, to show the time it was rendered. If it was not, as before seen, it is too late to set up any such objection. As to the admissibility of decrees, see 5 S. & M. 782; 11 Gill. & John. 173; 1 Phill. Ev. 393; 1 Starkie, 246. Now, the answer was filed in 1847. Now, the adverse holding, on the part of Elias Newell, certainly commenced at this time, if it did not before. Consequently, any claim that Darrell Y. Newell had, was barred in six years thereafter, or in 1853. Elias Newell was in possession during that period.

The possession of a slave adversely, so long as to bar any action brought against a possessor, vests in him the absolute right of property.   Martin & Yerger, 429; 3 Littell, 136; 3 Hen. & Munford, 56, 66; 5 Cranch, 358; 11 Wheaton, 571.

Now, the admissions in this case, if so they can be called, are not definite enough to prevent the operation of the statute.   They should certainly show a clear intent, for the statute is made for repose.   These admissions, such as they are, were made when officers were about to attach the property.   They were not made to Darrell Y. Newell himself.   They were made when the negroes were in his own possession, when he was exercising acts of ownership over them.   It clearly appears, from all the facts and circumstances in this case, that Elias Newell never intended to release his right and possession.

But, it may be contended, that the award is conclusive upon Elias Newell.   The proof shows that he agreed to submit the title of the negroes to three arbitrators, and abide their decision.

That, at the time the arbitrators were in the act of adjusting a settlement between them, Elias Newell said that he would consent to a division, but did not intend to release, under the award, his legal rights.

It is proved, by one of the arbitrators *themselves,* that he made this statement and reservation both before the award was made, at the time it was being made, and after it was made.

Certainly, then, it cannot be pretended that he was concluded by the award.

He revoked the power of the arbitrators.   Admissions, by a party, may be the best or the weakest evidence for a party, according to the attending circumstances by which they are to be weighed. 12 S. & M. 355.

Moreover, the submission and the award were verbal, and not in writing.

But, again, the title to the negroes in controversy was submitted for arbitration; but the award did not decree or adjudge as to the title, but merely decreed a division,—one-half to Elias Newell, and one-half to Darrell Y. Newell.   The matter in controversy was the title, and the arbitrators did not pass upon it.   The controversy,

in this case, respects the title; and an award, decreeing a mere division, is not conclusive or pertinent.

An award must be *strictly* in accordance with the submission. 1 Pike, 206; 3 Harrington, 347; 5 S. & M. 712.

An award must be *certain.*   5 S. & M. 712.

A submission, though expressed to be irrevocable, may be revoked before award made.   Watson on Arbitration and Award, 8; *Vyniors Case,* 8 Coke, 162; 6 Dana, 307; 1 Alabama, 238.

It must be final, and it is not final *without consent.*   1 Penn. St. R. 395.

So an admission by a party under a misapprehension of his legal rights, does not affect him.   4 Wendell, 292, 298, 299; Hardin, 281, 283, 284, 289.

Elias Newell merely consented to a *division,* probably because he knew that he would not be much prejudiced thereby, as he doubtless intended immediately to test the *title* in a legal tribunal. It was regarded by him as a mere temporary adjustment of the matter in controversy, for the sake of peace.

But admitting as to this case, in general, that there is a conflict of testimony, so that the mind cannot repose with entire confidence and conclusion on either party, the verdict of the jury will not be disturbed.   12 S. & M. 608.

A new trial will not be granted unless the verdict of the jury be greatly against the preponderance of evidence, especially where the evidence is conflicting.   12 S. & M. 615.

2. We contend that the deed was void, because there was no delivery.   The mere fact that it purports upon its face to be delivered is not conclusive; but, if pertinent at all, is *prima facie* evidence only of a delivery, and will only be binding when no rebutting evidence overthrows this presumption.

Where a deed *purports to be delivered,* and is in the *hands of the party claiming under it,* it is only *prima facie* evidence of a delivery.   *Ward* v. *Ross,* 1 Stewart, 136; *Houston* v. *Stanton,* 11 Alabama, 413; *McMorris* v. *Crawford,* 15 Alabama, 271.

The reason is, that in many instances the expression on the face of the deed of a *delivery* is only formal, and not conclusive.

For this reason, where the *consideration* is expressed in a deed as having been *paid,* it is only *prima facie* evidence, and may be

rebutted, because this clause is often asserted as a matter of form. 3 Harris & McHenry, 433; 17 Mass. 249; 3 Serg. & Rawle, 355, 564, 570; 7 Ib. 309; 14 Johnson, 214; 20 Ib. 338; 4 N. Hamp. 229, 397; 7 Monroe, 291, 293; 1 J. J. Marshall, 388, 389, 390.

But again, it is said that it was acknowledged and recorded; but these facts, also, are not conclusive to establish a delivery. They are only *prima facie* evidence of this fact.

A deed duly executed and recorded, but never delivered to, or accepted by the grantee, is void. *Jackson* v. *Richards*, 6 Cow. 120.

A deed, though signed, sealed, and acknowledged, is not delivered. *Jackson* v. *Leek*, 12 Wendell, 107; *Herbert* v. *Herbert*, Brevard, 382; *Porter* v. *Buckingham*, 2 Harris (Penn. St.), 197, 501; *Elsey* v. *Metcalf*, 1 Denio, 326. And see to same effect, *Maynard* v. *Maynard*, 10 Mass. 456; *Harrison* v. *Phillip's Acad.*, 12 Ib. 456; *Hughes* v. *Easten*, 4 J. J. Marshall, 572; *Barnes* v. *Hatch*, 3 N. Hamp. 304; *Dawson* v. *Dawson*, 1 Rice Ch. 243.

But a registration of a deed only amounts to a *prima facie* evidence of delivery. 2 Harris (Penn.), 361; 1 Pennsylvania R. 32; 23 Wendell, 43.

A delivery of a deed is parting possession with it in such a manner as not to be able to recall it. *Kirk* v. *Turner*, 1 Dev. Eq. 14.

In all sales, gifts, and other contracts, where the party intends to transfer the possession, the delivery must be made with the intention to enable the receiver to obtain dominion over it. 3 Maryland Ch. Dec. 266; 3 S. & R. 20; 5 S. & R. 275; 4 Rawle, 200; 9 John. 337; 1 Halsted Ch. 434.

Now, in this case, although the deed professes on its face a delivery,—a mere formality, as we have before shown,—Griffin H. Holliman proves that Darrell Y. Newell was not present when the deed was executed. Holliman was one of the witnesses to its execution.

Whether there has been a delivery or not, is a question of fact for the jury to determine. *Van Hook* v. *Barnett*, 4 Dev. 268; *Fisher* v. *Keane*, 1 Watts, 278; 11 Vermont, 621.

The evidence is, at least, conflicting, and the verdict of the jury should not be disturbed. There is not the same presumption in favor of a stepson. 6 Rich. 280.

3. A ground of error assigned is, that the court below refused

to permit proof of an arbitration and award to come under the general issue. This did not operate to the injury of the plaintiffs in error;. for, in fact, they were permitted to prove the arbitration and award.

4. The objection to the admission of the answer and decree of chancery was properly overruled; because, in the first place, they were admissible for certain purposes in this case; and, in the second place, because no special objections were pointed out. 10 S. & M. 440; 12 Ib. 161.

5. The complaint was demurred to, because it charged an unlawful taking and detainer, whereas, the affidavit only alleged an *unlawful detainer.* This is no variance; certainly it is not, under our statute.

6. The instructions are considered, in the abstract, as right.

*T. J.* and *T. A. Wharton,* and *F. Anderson* and *Geo. S. Yerger,* on same side.

FISHER, J., delivered the opinion of the court.

This was an action of replevin, brought by the plaintiff below, in the Circuit Court of Jasper county, to recover certain slaves, alleged by the declaration to have been wrongfully taken by the defendants, and by them wrongfully detained from the plaintiff.

The declaration was demurred to, on the ground that it alleges both a wrongful taking and detention of the slaves; and that the affidavit and writ allege only a wrongful detention. So far as the plaintiff's right to recover the slaves is.concerned, it is immaterial whether there be a wrongful taking, in the first instance, or merely a wrongful detention. His right to recover the property, in either case, would be the same. But, in regard to the damages to be re-covered, a different question would be presented. The damages, in case of a wrongful taking, which in its inquiry might involve many collateral questions of tort and circumstances of aggravation, might be much greater in amount, than the damages which could be recovered in a case merely of the wrongful detention of the property. Besides, the judgment in the present and similar cases, where the property is replevied by the defendants, and the judgment is against them, must be rendered on the bond against both

the principals and sureties; and the covenant being for the payment only of such damages as were occasioned by the wrongful detention, and not for the wrongful taking, no judgment could be rendered for the damages in such case. But, as the plaintiffs' declaration was good as to the slaves or their value to be recovered, and defective only as to the damages, the demurrer, extending as it did to the whole declaration, was properly overruled. The affidavit being the foundation of the action, and the clerk's authority for issuing the writ, is of course part of the record.

It is next said that as no wrongful taking is established by the evidence, and it appearing that the slaves were, with the consent of the plaintiff, delivered to Darrell Y. Newell, one of defendants, and no time being stipulated for the return of the slaves, his possession could not become wrongful until a demand made by the plaintiff, and a refusal to deliver the slaves by the defendant.

As a general rule, this position is correct, when the defendant asserts no title in himself. But in this case, the defendant setting up title in himself, the demand would have been refused if it had been made; and the defendant cannot, therefore, complain of that which, under his own showing, could not injure him nor affect his rights.

Again, it is said that the court below erred in ruling out the evidence to show that the parties entered into an agreement to submit their respective claims to arbitration; that the arbitration was accordingly had, and the slaves, under the award, divided equally between the parties. This evidence was relevant to the issue, and should have been admitted.

It is again said, that the instructions of the court, relating to the deed under which the defendant claimed title, were erroneous.

. The defendant claimed under a deed of gift made in 1826. This deed recites, among other things, that the defendant is the son of the plaintiff, and that the slaves therein named were given in consideration of natural love and affection, and that one of the slaves . had been delivered in the name of the whole. This deed was by the plaintiff duly acknowledged and placed upon record in the proper office. It appears that the defendant was then about thirteen years of age. As to the other proof on this subject, we will forbear the expression of an opinion. But if it be true that the plain-

Newell et al. *v.* Newell.

tiff's object in executing the deed, and placing it upon record, was to vest an apparent title in the defendant, for the purpose of hindering, delaying, or defrauding his, the plaintiff's, creditors, the defendant being of tender years, and therefore innocent of the fraud, he, the plaintiff, cannot be permitted to question the title passing under the deed. The deed having served the purpose of defeating the claims of creditors, the plaintiff cannot deny either its delivery or the title of the defendant, unless he can show a title acquired in some other mode. Supposing these facts to be true, both delivery of the deed and of the property must be regarded as facts established, for the reason that a party cannot allege or take advantage of his own fraud.

But as a question may arise upon the effect of the deed, supposing no fraud to have been intended by the grantor, we will notice this point. As a general rule, a gift is never complete without a delivery of the property; but where a party acknowledges, under his hand and seal, that a delivery was in fact made, he will be estopped to deny the fact thus admitted, especially when the deed has been regularly recorded.

It is also said that the court erred, in admitting the plaintiff below to read as evidence his own answer to a bill filed by the defendant, touching the slaves in controversy. It appears that the defendant, about the year 1847, filed his bill in the Superior Court of Chancery, setting up a title to the slaves in controversy, under the deed of 1826. The plaintiff in this action answered that bill, and the case was finally dismissed for want of prosecution. The decree not being one settling the rights of the parties, neither party could use the record for this purpose. Nor could either party be permitted, in another controversy, to avail himself of his own statements in the pleadings in the chancery court as evidence. We, therefore, think that the court erred on this point.

The case may be made to turn, upon another trial, on the deed of gift of 1826, the arbitration said to have been entered into between the parties, and the Statute of Limitations, if insisted on by the plaintiff. As all these questions must depend, more or less, upon the testimony to be introduced on another trial, we give no opinion as to the facts in the record.

Judgment reversed, and new trial granted.