# CHARLESTON

### KUYKENDALL v. FISHER.

Submitted September 8, 1906.  .Decided  December 11, 1906.

1. FINDING LOST GOODS—*Lost Property*.

   Money or property is not lost in the sense that a finder may, by his discovery and possession thereof, obtain absolute title thereto, unless it has been voluntarily abandoned or cast away by the owner.  (p. 88.)

2. SAME.

   Property is usually considered lost in a legal sense when the possession has been casually and involuntarily parted with, as in the case of an article accidentally dropped by the owner, (p. 88.)

3. SAME—*Treasure Trove*.

   Coin, gold and silver plate and similar articles hidden for safe keeping and forgotten, or remaining undiscovered by reason of the death of the person who hid them, are technically known as treasure trove.  (p. 100.)

4. SAME—*Rights of Finder*.

   The finder of lost property or treasure trove acquires, by the act of finding, no right of property thernin as against the owner; but, as against all other persons, he is entitled to the possession thereof as a *quasi* depositary, holding for the owner.  (p. 101.)

5. TRIAL—*Instructions—Weight of Evidence*.

   In a contest between the finder of money and an alleged owner thereof, proof by the latter of circumstances strongly tending to establish title in him, unopposed by any evidence tending in an appreciable degree to prove the contrary, precludes the giving of instructions, predicated on the assumption of conflict in the eyidence, requiring a verdict for the party in whose favor it preponderates. (p. 102.)

6. SAME.

   The giving of instructions, having no basis or foundation in the evidence in the case in which they are given, is prejudicial and constitutes reversible error.  (p. 102.)

7. SAME—*Directing Verdict*.

   When the evidence adduced by one of the parties to a civil action at law is sufficient to warrant a finding in his favor, and no evidence appreciably tending to overthrow the case so made has been adduced by the opposite party, it is the duty of the court to direct a verdict in favor of the former, if requested so to do.  (p. 102.)

8. REPLEVIN—*Necessity of Demand.*
  A defendant who asserts title in himself independent of any
  contract, express or implied, between him and the plaintiff, can-
  not interpose, as a defense to the action, failure on the part of the
  latter to demand from him the property in controversy before the
  commencement of the action.' (p. 102.)

Error to Circuit Court, Mineral County.

Action by Edward Kuykendall, by his next friend, against
Harry G. Fisher, administrator. Judgment for plaintiff, and
defendant brings error.

                                    *Reversed and Remanded.*

HARRY G. FISHER, for plaintiff in error.
W. H. GRIFFITH, for defendant in error.

POFFENBARGER, JUDGE:

A writ of error to the circuit court of Mineral county
has brought here, for review, a judgment in favor of Edward
Kuykendall, an infant, suing by his next friend, against Harry
C. Fisher, as administrator of the estate of Ellen Hughes,
deceased, rendered by that court on an appeal from a judg-
ment of a justice of the peace, in whose court the action
originated.

As the rulings complained of relate to the rejection of
evidence offered and instructions given and refused, a
statement of the principal facts and the nature of the
case, with reference, to some of the evidence, is neces-
sary.

Fisher, as administrator of Ellen Hughes, sold to one
Pierce Helmick, among other household articles, a heating
stove. Sometime afterwards the plaintiff, Edward Kuyken-
dall, a boy about thirteen years old, while playing about the
premises of Helmick, discovered in the stove, a small to-
bacco sack containing a considerable amount of money in
gold, and wrapped in a cloth. Not knowing its value he
gave some of it away and probably lost a portion of it. He
gave to Chas. Beemas, another boy, ten dollars, who handed
it to Mrs. Helmick and to a boy named Jackson Mayhew
two dollars and a half, and on returning home his mother
took from him what he had left, amounting to one hundred
and forty-five dollars. This she took to Fisher, the admin-
istrator, and delivered it to him. Thereupon Fisher de-

manded and received from Mrs. Helmick what she had received, and from the Mayhew boy what he had received, and advertised the fact of the loss of a portion of the money, but was unable to recover any more.     There is considerable conflict in the evidence as to what passed between Mrs. Kuykendall and the administrator, at the time of the delivery to him of the money she had taken from the boy, she contending that it was delivered to him as a mere bailee, until such time as he might determine whether it belonged to the estate of the deceased, and he contending that it was delivered over to him absolutely as the property of his decedent. Witnesses for the plaintiff also protest ignorance as to the place in which the money was found, Helmick having had two stoves in the out house in which it was discovered; but the evidence of the defendant is positive and direct as to the stove in which it was found. He testifies that the boy took him to the stove and it was exactly like the one he had sold to Helmick and he believed it was the same stove. In opposition to the contention that the money was found in that stove Helmick declares he poured the ashes out of the stove on the floor of the room in which it was when he purchased it. Witnesses testify that the floor of the room, upon examination sometime after the removal of the stove, showed no sign of any ashes having been on it, and the boy says he found the package in the bottom of the stove on the ashes. Fisher further showed, by his own testimony, that his decedent had some money at the time of her death. He found in one bank about $180.00 in which it had been deposited for about two years, in another at Pittsburg $475.50, with accumulated interest, and some stock in a Washington building and loan association from which he realized about $125.00. It further appeared from the testimony of James Hughes, a brother of the decedent, that his sister, a short time before her death, had in her possession a pocket with strings attached to it by which it could be fastened around her waist, out of which she took, and put it into his hand, a small package wrapped in cloth, which he believed, after having felt it through the wrappings, to contain gold, but he did not see it. Defendant offered to prove by this witness declarations made by the decedent, concerning the contents of the package and the value thereof, but the court rejected the evi-

dence. He attempted to prove the same sort of declarations by another witness, Mrs. H. G. Steortz, but the court refused to allow her testimony to go to the jury. Helmick admits in his testimony that Fisher told him, after he had bought the goods, including the stove, that some money had been lost about the Ellen Hughes premises, and if he should find it, it would belong to the estate. Sometime after the delivery of the money to the plaintiff, Edward Kuykendall and Helmick brought an action against Fisher in his individual capacity for the recovery of the money before Justice Doyle, which as to Helmick was abated, and as to the boy, was defeated, Then this action was brought against Fisher in his fiduciary capacity before another justice.

After the evidence had been heard by the jury, the court gave, at the instance of the plaintiff, the following instructions:

"1. The court instructs the jury that the finder of lost property is the owner of it as against all the world except the loser or the real owner; and it is incumbent upon those claiming to have lost the property to prove by a preponderance of the testimony that they are the *lossers* or real owners of it, and if they fail to do this, they must find for the plaintiff.

"2. The Court instructs the jury that if they believe from the evidence said ———————————— gold pieces were lost property, and that plaintiff found them it does not matter where he found them; they belong to him against all the world except the loser or real owner. And it is incumbent upon those claiming to have lost the property to prove by preponderance of the testimony that they are the *lossers* or real owners of it; and if they fail to do this, you shall find for the plaintiff."

The defendant requested the court to give the following instructions:

"The Court instructs the jury that they find for the defendant.

"No. 1. The Court instructs the jury that the plaintiff must prove by a preponderance of the evidence all matters necessary to give him a verdict in this cause.

"No, 2. The Court instructs the jury that even if you

believe that the plaintiff is entitled to recover in this cause, yet you cannot give him a verdict but must find for the defendant, unless you believe from a preponderance of the evidence that defendant was requested before the institution of this suit to return the property in question.

" No. 3.  The Court instructs the jury that if they believe from the evidence that the defendant received the money from the plaintiff or his mother, the witness, Martha Kuykendall, with the statement by said plaintiff or Martha Kuykendall that it belonged to the estate of Ellen Hughes, dec'd., or with the instruction to find the owner and to deliver the same; and, if, in so acting, in good faith the said defendant believed the property to be part of the estate of Ellen Hughes you shall find for the defendant.

" No. 4.  The Court instructs the jury that lost goods are such as when the possession has been casually parted with and that goods are not lost goods when the owner lays it away, even if he forgets where he puts it.

" No. 5.  The Court instructs the jury that if you believe from the evidence that witness Pierce Helmick bought a stove from the estate of Ellen Hughes, deceased, and at the time of said purchase it contained the gold in question in this suit then you must find for the defendant.

" No. 6.  The Court instructs the jury that the loser of goods or one that lays away his property though he forgets where, is not divested of his property therein, and that the finder acquires no title as against the owner.

" No. 7.  The Court instructs the jury that if you believe the gold in issue in this cause was lost property, and if you further believe that it was found in a stove bought by Pierce Helmick from the estate of Ellen Hughes, deceased, you shall find for the defendant.

" No. 8.  The Court instructs the jury that if you believe the gold in issue in this cause was not lost property but laid away, even if forgotten where, and that it was found in a stove bought by Pierce Helmick from the estate of Ellen Hughes, deceased, you shall find for the defendant.

" No. 9.  The Court instructs the jury that if the infant got the property out of a stove belonging to one Pierce Hel-

mick without consent of said Helmick then you must find for the defendant."

Subject to exceptions by the defendant, the Court refused all these instructions and gave in lieu thereof the following:

"The Court instructs the jury that they cannot find for the plaintiff unless it has been proved by a preponderance of the evidence in this case, that the property was lost property at the time the plaintiff claimed to have found it and that he did find it."

The rejected evidence of James Hughes is in substance that his sister, after he had guessed the amount of money in the package at five hundred dollars, in response to her request, replied that it contained about $250.00. That of Mrs. Steortz was to the same effect, and, also, that Ellen Hughes had told her she had hidden her money in a stove, preferring to have it burned rather than stolen, and believing a thief or robber would probably not expect to find it in a stove. Declarations of deceased persons, accompanying the act of possession are usually admitted by the courts to show that possession was held under a claim of title. The declarations are considered part of the *res gestae.* Wigmore Ev., section 1778; 16 Cyc. 1172 *et seq.* But the declarations here offered extended to the value of the property and disposition of it made by the declarant, matters lying far beyond the scope of the rule, and the court properly rejected them. *Abney* v. *Kingsland*, 10 Ala. 355, 44 Am. Dec. 491.

All the instructions given by the court, it will be observed, are predicated upon the hypothesis of the loss of the money. It is further to be noticed that some of the instructions refused embodied the theory that, if the money was found in the stove which had belonged to the estate of Ellen Hughes, it was not to be deemed lost money, but, on the contrary, concealed property, belonging to the estate of the defendant's decedent. These instructions are somewhat informal, declaring abstract principles of law, rather than asking for the application of the principles to the concrete case, as the defendant viewed it upon the evidence adduced, but they nevertheless would have directed the attention of the jury to his theory of the case. In view of this, it is important to ascertain what the law deems lost property.

19 Am. & Eng. Ency. Law 579, thus defines it, and incidentally states what is not such property, although it may have a semblance of that character: "Goods are lost in the legal sense of the word only when the possession has been casually and involuntarily parted with, as in the case of an article accidentally dropped by the owner. If the owner of an article purposely lays it down, intending to take it up again immediately, and he forgets it and leaves it where it is laid (e. g. a purse left on a counter of a shop,) or if he lays it away and then forgets where he put it, such article is not lost, but is merely mislaid, and therefore the incidents of lost goods do not attach." The law, as thus stated, indicates that, as to certain persons, property may be lost, or deemed to be so, but not lost as to the true owner thereof. Strangers coming upon it unaware of the circumstances or the means by which it came to the place in which they discover it, may, in the absence of any knowledge indicating the contrary, such as the place in which it is, presume it to be lost, and as the decisions will reveal, such presumption is indulged by the law. The finder usually has the benefit of it in law until the contrary is shown. But, though the owner does not appear, and it is not known who he is, the circumstances under which the discovery is made are sometimes such as to make it certain that the property has not been lost, but only mislaid or concealed and forgotten, or hidden by one who has since died, wherefore the place of concealment cannot be ascertained except by search. It may be safely predicated of the decisions that they hold property, discovered under a given state of circumstances, lost for some purposes, but not for others. It depends upon the nature of the action and the parties thereto.

What has been said indicates that the place in which money or property, claimed as lost, was found is a potent factor in the determination of the question whether it was lost, and so the authories expressly hold. This fact is immaterial, ordinarily, as between the finder and all persons other than the owner. But, in determining whether the property was lost, or only misplaced or concealed, the important question in this case, it is a most powerful factor. In *Durfee* v. *Jones*, 11 R. I. 588, 23 Am. Rep. 528, money had been found in an iron safe which the plaintiff had pur-

chased and left with the defendant for safe keeping with permission to use it. The defendant, a blacksmith, using the safe, under these circumstances, as a means of caring for his books, found, secreted between the sheet iron exterior and the wooden lining, a roll of bills amounting to $165.00. Having informed the plaintiff of the discovery and refused to deliver to him the money upon demand, an action was brought for the recovery of it which resulted in a judgment for the defendant. The court said in the opinion: "We think the money here, though designedly left in the safe, was probably not designedly put in the crevice or interspace where it was found, but that, being left in the safe, it probably slipped or was accidentally shoved into the place where it was found without the knowledge of the owner, and so was lost, in the strictest sense of the word. The money was not simply deposited and forgotten, but deposited and lost by reason of a defect or insecurity in the place of deposit." Thus the fact that it did not appear to have been deposited in the place in which it was found was decisive of its character as lost money. In *Bowen* v. *Sullivan*, 62 Ind. 281, the plaintiff, while engaged as an employe in defendant's paper mill, in sorting a bale of old papers which the employer had bought for manufacture, found a number of bank notes, in a clean unmarked envelope in the bale of old papers. The court, in deciding it to be lost money, reached its conclusion in the following manner: "The jury in the case now before this court might have found from the evidence that an envelope was picked up from the floor of the defendants' paper mill by Ellen Quinn; was opened by her and found to contain two fifty-dollar bills; that the bills were taken by her and the envelope returned to the floor; that the envelope was purchased by the defendants at the rate of two and a half cents per pound, as waste paper, raw material, to be used in the manufacture of paper; that neither the seller of the envelope nor the buyer of it knew that it contained the bills in question, and only sold and bought and paid for the envelope; that the rightful owner of the money is still unknown. Had the notes or bills in question been lying upon the floor, unenclosed when found, the case would have fallen within most, if not all, the approved authorities." In *Deaderick* v. *Oulds*, 86 Tenn. 14,

the subject of controversy was an unmarked saw log which had been carried by the high water in. a river from the owner's premises into a mountain gorge, where it remained for over two years lodged in drift and unclaimed. This, the court held to be lost property, distinguishing the case from other Tennessee cases in which the property in controversy had been held not to have been lost. In *Lawrence* v. *Buck*, 62 Me. 275, a chain found in a river with one end fastened round a cedar buoy in a dam and partly covered with gravel was declared lost property. In *Clarke* v. *Maloney*, 3 Harr. (Md.) 62, logs found afloat in a river were held to be lost property. In *Bridges* v. *Hawks*, 7 Eng. Law & Eq. Rep. 424, a parcel containing bank notes picked up from the floor of a shop was held to be lost property. In *Ellery* v. *Cunningham*, 1 Metc. (Mass.) 112, bales of cotton found floating in a sea port were held to be lost property. In *Mathews* v. *Harsell*, 1 E. D. Smith (N. Y.) 593, bank notes found by a servant in her employer's house were held to be lost property as against a third person, suit having been brought against him for the same by the servant with the assent of her employer.

A few of the cases illustrating the other side of the proposition are the following: In *Lawrence* v. *State*, 1 Humph. (Tenn.) 228, it was held that a pocket book which a person had laid upon a table in a barber shop, to remain there while he should get a bank bill changed, and which, on leaving the shop, he forgot to take with him, but for which he immediately returned to the shop, upon missing it, was held not to be lost property. It had been formerly held in *Porter* v. *The State*, M. & Y. (Tenn.) 226, that lost property could not be the subject of larceny, and the Court in distinguishing the cases, said: "We answer that the pocket book, under the circumstances proved, was not lost, nor could the defendant be called a finder." In *McAvoy* v. *Medina*, 11 Allen (Mass.) 548, a pocket book picked up in a barber shop was held not to be lost property, so far as to enable the finder to recover it from the barber to whom he had delivered it. The Court said: "The property was voluntarily placed upon a table in the defendant's shop by a customer of his, who accidentally left the same there and has never called for it. The plaintiff also came there as a cus-

tomer and first saw the same and took it up from the table. The plaintiff did not by this acquire the right to take the property from the shop, but it was rather the duty of the defendant owner to use reasonable care for the safe keeping of the same until the owner should call for it." * In *Kincaid* v. *Eaton,* 98 Mass. 139, an article accidentally left on a desk in a banking-room was held not to be lost, although it was advertised as such and a reward promised to the finder upon returning it. In *Bank* v. *Pleasants,* 6 Whar. (Pa.) 375, a package containing a hundred thousand dollars of bank notes, found on the floor of a fire proof vault, where the custodian thereof had dropped it, thinking he had put it in a box or compartment in the vault, was held not to be lost property, although it was not known to whom it belonged. In *Livermore* v. *White,* 74 Me. 452, the facts were as follows: The owner of a tannery, when removing his hides, omitted to take them all out. The tannery was sold, and many years after, the plaintiff, while laboring for the defendant in erecting a factory on the premises, discovered the hides so left. The court held that they were neither lost, abandoned, nor derelict, nor treasure trove. In *Huthmacher* v. *Harris's Admrs.,* 38 Pa. St. 491, 80 Am. Dec. 502, money and other valuables secreted by a decedent in a grain drill were held not to be lost property. In *Merry* v. *Green* 7 M. & W. 623, a purse containing money found in a bureau by a person who had purchased it at public auction was held not lost property. Money found in a bureau by a person to whom it was delivered for repairs is not lost money. *Cartwright* v. *Green,* 8 Ves. Jr. 405.

In order to vest in a finder the absolute right to property it must appear that the owner has voluntarily and wholly abandoned it, intending not to reclaim it. *Tancil* v. *Seaton,* 28 Grat. 601. But the finder of property, not so abandoned, has, ordinarily, a right of possession as against all the world except the rightful owner. *Id; Armory* v. *Delamirie,* 1 Strange 504; *Bridges* v. *Hawksworth,* 7 Eng. Law & Eq. 424; *Bowen* v. *Sullivan,* 62 Ind. 288; *McAvoy* v. *Medina,* 11 Allen (Mass.) 549; *Mathews* v. *Harsell,* 1 E. D. Smith (N. Y.) 393; *Hamaker* v. *Blanksworth,* 90 Pa. St. 377; *Durfee* v. *Jones,* 11 R. I. 588; *Deaderick* v. *Oulds,* 86 Tenn. 14. But he holds it as a *quasi* depositary for the benefit of the

true owner.  He does not hold it as his own property, although it may have been lost in the sense that it was not misplaced or put away for safe keeping.  This is well illustrated in the case of *Railroad Co.* v. *Haws,* 56 N. Y. 175, in which it appeared that the defendant had found a sum of money in one of the railway company's cars which he delivered to the conductor to be restored to the owner, when called for.  Later, he had demanded the money from the railroad company, to whose treasurer the conductor had given it, and, upon non-compliance with the demand, had brought an action and recovered a verdict.  Before judgment, however, the owner of the money demanded it of the railroad company, whereupon the company brought a suit in equity in which the claims of the respective parties were brought to the attention of the court, and it was held that, upon the appearance of the owner and his demand for the money, all right of the finder was ended.  In discussing the case the court said:  "It is unnecessary to inquire what title Haws acquired, by finding the money, in case it had been abandoned by the owner, for the reason that it now appears that it was not voluntarily abandoned, but accidentally lost by Mallady, in a car of the plaintiff while a passenger therein, where it was found and picked up by Haws.  That the former owner has abandoned property which has been found, is but a presumption in favor of the title of the finder, which may not only be repelled by direct proof, but which, from the character of the property and circumstances under which it is found, may not obtain at all in his favor.  It is upon the latter ground that the finder may be convicted of larceny if he takes the property found with intent to deprive the owner thereof, and fraudulently apply it to his own use, if at the time of finding, there is upon the property marks enabling him to ascertain the owner, or he is then in the possession of facts enabling him to do so.  It having been shown that Mallady accidentally lost the money in question, the title thereto remained in him.  Haws, by finding, acquired no title, and, having none, conferred none upon the conductor of the train, to whom he delivered it for the purpose of restoring it to the owner if called for; and the conductor by delivering the same to the treasurer of the plaintiff for the same purpose conferred no title to it.  When the plaintiff

received the money, therefore, it was the property of Mallady and he had the right to call upon the plaintiff for it; and upon furnishing reasonable proof of his title, enforce its delivery by the plaintiff to him.   While the money remained in the hands of the plaintiff it could not defend against a claim therefor made by Mallady, upon the ground that Haws had found it in its car and had delivered it to the conductor, from whom the plaintiff received it.   Mallady never having parted with his title and no one having ever acquired any as against him, had the right to demand and recover it from any one in whose possession he found it.   After the recovery of the verdict, Mallady demanded the money of the plaintiff. It was still in his hands.   A refusal to restore it to him would have made the plaintiff liable to him for the amount. Payment of the verdict recovered by Haws, and the costs of the action to him, by the plaintiff, would have been no defence against this liability.''

It is not our purpose here to approve the doctrine of all the decisions referred to, nor to attempt to deduce from them all the principles which they declare and enforce.   In some of them, the controversies arose between employer and employe; in others between the finder and the owner of the premises on which the discoveries were made; and in others between the State and the finders on charges of larceny.   As we have seen, the owner of the premises is, under some circumstances, entitled to the custody and possession of the property for the benefit of the owner, as against the discoverer thereof, while in others he is not; but, in the former class, it was determined that the property had not been lost, but only forgotten and left where it had been designedly placed.   We apprehend that in none of them was there an absolute right of property vested in the finder.   The vesting of such a title is in every case dependent upon whether the property has been abandoned by the true owner.   The finder has a right of possession independently of that question, but certainly not any more than that and possibly a presumptive, contingent right of property, both of which fail on the appearance of the true owner.   To justify the finder, in appropriating money or other property to his own use, the circumstances must be such as to afford reasonable ground for the belief that it has been voluntarily abandoned and is, therefore, lost

property in the full legal sense of the term.   Upon a ques-
tion reserved, in *Merry* v. *Green*, 7 M. & W. 623, Baron
Parke, delivering an opinion in the Court of Exchequer, said:
"The old rule, that 'if one lose his goods and another find
them, though he convert them *animo furandi* to his own use,
it is no larceny,' has undergone in more recent times some
limitations; one is, that if the finder knows who the owner of
the lost chattel is, or if, from any mark upon it, or the circum-
stances under which it is found, the owner could be reasonably
ascertained, then the fraudulent conversion, *animo furandi*,
constitutes a larceny.   Under this head fall the cases where
the finder of a pocket-book with bank notes in it, with a name
on them, converts them *animo furandi;* or a hackney coach-
man, who abstracts the contents of a parcel which has been
left in his coach by a passenger, whom he could easily ascer-
tain; or a tailor who finds, and applies to his own use, a
pocket-book in a coat sent to him to repair by a customer,
whom he must know: all these have been held to be cases of
larceny; and the present is an instance of the same kind, and
not distinguishable from them.   It is stated that the offence
cannot be larceny, unless the taking would be a trespass, and
that is true; but if the finder, from the circumstances of the
case, must have known who was the owner, and instead of
keeping the chattel for him, means from the first to appro-
priate it to his own use, he does not acquire it by a rightful
title, and the true owner might maintain trespass; and it seems
also from *Wynne's case*, that if, under the like circumstances,
he acquire possession, and means to act honestly, but after-
wards alter his mind, and *open* the parcel with intent to embez-
zle its contents, such unlawful act would render him guilty of
larceny."   The case of *Sovern* v. *Yoran*, 16 Ore. 269, arose
under a statute providing for the disposition of lost property
when found, and the money had been found hidden in the
earth in a condition which indicated that it had been placed
there by design, and the Court held that it was not lost in
the sense of being abandoned by the owner, although by
whom it was placed there and to whom it belonged was not
known and was probably not suspected.   In such cases as
these it seems the loss must be absolute.   Many other cases,
in dealing with the question where other rights are involved,
treat property as lost when it is apparent that it has not been

abandoned, and possession of it has been casually, accidentally lost, as where money is found in a highway or other places, in a purse with the name of the owner in it, from which the only reasonable inference is that it was dropped by accident and not cast away. Under such circumstances the finder is entitled to the possession of it and may defend his possession, but he is not treated as the owner. He is simply a sort of depositary. This is well illustrated in the Maryland case of *Clark* v. *Maloney*, 3 Harr. 68, holding that a man who had found logs afloat in the river and moored them was entitled to their possession as against another man who again found and moored them after they had broken loose from the place in which the first finder had anchored them; and also the case of *Deaderick* v. *Oulds*, 86 Tenn. 14, holding that one who had dislodged a lost log from a gorge in a mountain stream was entitled to the possession of it as against the owner of premises on which it was again cast ashore and lodged after having escaped from the first finder. In neither of these cases did the court find it necessary to determine whether the property was, in legal intendment, lost, so that the finder might have appropriated it to his own use without being guilty of larceny, or a conversion. As we have seen, it has been held, in another class of cases, that property found under certain conditions is not deemed to have been lost, in the sense that the finder is entitled to its possession or a reward for its return, although the owner was not known and it was apparent that he did not know where the property was, as is in the case of an article left on a desk in a banking room and purses left in barber shops. In another class of cases it is held that property found concealed in other property, such as bureaus, safes and machinery, is not lost in the sense of abandoned, unless it appears to have been casually or accidentally placed there. *Durfee* v. *Jones*, 11 R. I. 588; *Huthmacher* v. *Harris' Admrs.*, 38 Pa. 491; *Warren* v. *Ulrich*, 130 Pa. St. 413. Money found under such conditions constitutes what is known in law as treasure trove. "This name is given to money or coin, gold, silver plate, or bullion which, having been hidden or concealed in the earth, or other private place, so long that its owner is unknown, has been discovered by accident." 28 Am. &. Eng. Ency. Law 472; *Sovern* v. *Yoran*, 16 Ore. 276; *Livermore* v. *White*, 74 Me. 456.

The principles declared by these authorities make it manifest that the plaintiff, in asserting his demand against the defendant, claiming as owner of the money, occupies a position radically different from that of a finder who is resisting the claim of some person other than the owner. That he found the money is only one element in the case. That the situation in which the money was found indicates that it had been placed, rather than lost, there, is another, excluding, or, at least, tending to exclude, the idea of voluntary abandonment thereof, and, so, of absolute property in the finder. Whether it got into the stove by accident and was technically lost in a qualified sense, or was hidden there and so became technically treasure trove, is, however, a matter of no considerable consequence as between the finder and owner. In either case, the finder holds for the benefit of the owner, as we have seen.

These conclusions lead to the question of ownership in the defendant's decedent as the only issue in the case. The loss or concealment and the finding are uncontroverted facts. Nothing is denied except the assertion of title in the defendant. All the evidence bearing on that question is favorable to him. The money was found in a stove which his decedent had owned and used and which had been but recently removed from her premises. She had been a woman of sufficient means to enable her to possess the amount of money found in it, and she had, only a short time before her death, possessed a small precious package similar to the one found and which, tested by its weight and the sense of touch, seemed to contain coin—gold, a witness says. The man in whose possession the stove was, a witness in the case, does not claim that he or any member of his family placed the package in it, or knows how it came to be there. The case made by the defendant on the issue is unopposed by anything except the bare possibility that some person other than the decedent may have placed it there, and the slight circumstances that Helmick poured some ashes out of the stove before removing it, and left it in the alley a week before putting it in his outbuilding, facts, if they be so, not necessarily inconsistent with the conclusion to which the evidence directly tends. The boy says the package "was lying right on top of the ashes." Fisher says that, when he looked in the stove, after

the finding of the money, "The ashes were drawn forward in the base of the stove." All this evidence may stand together without the slightest difficulty. Helmick may have poured out part of the ashes and thus caused the package to roll to the top of the residue, where the boy found it. Thus the evidence for the plaintiff does not tend to sustain his side of the issue in an appreciable degree, and, therefore, amounts, in law, to no evidence. In that state of the case, no instructions should have been given by the court, tending in any degree to impair the weight of the evidence for the defendant. The vice of an instruction, not based on evidence in the case, consists of its tendency to do that. In effect it tells the jury there is evidence when there is none. It imparts strength to one side of the case against the other and thereby misleads the jury. The giving of an instruction, having no basis in the case, was deemed sufficient cause for a new trial in *Parker* v. *Building & Loan Association*, 55 W. Va. 134, and that decision is within the principles declared in *Bloyd* v. *Pollock*, 27 W. Va. 75; *State* v. *Belknap*, 39 W. Va. 427; *Parkersburg Industrial Co.* v. *Schultz*, 43 W. Va. 470; and *McDonald* v. *Cole*, 46 W. Va. 186.

The wrongful tendency of the two instructions given at the instance of the plaintiff is apparent. They assume the existence of conflict in the evidence by submitting to the jury the question of preponderance notwithstanding the evidence of title in the defendant is not met or repelled, in any appreciable degree, by the circumstances relied upon by the the plaintiff in resistance. Of the same character is the instruction given by the court in lieu of those requested by the defendant, and the error of the court in giving each of them is manifest. The reason assigned for error in giving plaintiff's instructions apply to defendant's instruction No. 1. As the evidence all tends to sustain the position of the defendant, his request for an instruction to the jury to find for him should have been complied with. Defendant's instruction No. 3 was properly refused. His mere belief of title in his decedent and what was said at the time the money was delivered to him constitute no defense to the action. His instruction No. 4 is correct in principle, but is objectionable on two grounds. First, it is purely abstract. Second, it is partial and fails to cover the entire case or any hypothesis for

which there is a basis in the evidence. It does not meet the·
issue of title presented. The last objection applies to his.
instructions Nos. 5, 6, 7 and 8, all of which ignore part of
the evidence tending to show the package was lost or de-
posited in the stove by the decedent. For this reason the
court was not bound to give them. If they had been given,
the error in doing so would have been harmless, since they
would have operated in the right direction, toward which all
the evidence tends, but the plaintiff was entitled to have them
put in proper form. Though the evidence may leave no
room for two findings, the failing party is entitled to an or-
derly and correct presentation of the case to the jury. Prin-
ciples already discussed at length show the manifest unsound-
ness of his instruction No. 9. No evidence in the case tends
in the slightest degree to prove that the package was in any
sense entrusted to the care of Helmick. The case is not
within the principle enunciated by the barber-shop and bank
cases.

The object of defendant's proposed instruction No. 2 was
to bar recovery by lack of proof of demand made upon him
for the return of the money before the action was commenced.
Having received the money in his individual capacity, with
the understanding that he should ascertain whether it be-
longed to Ellen Hughes' estate, and, if not, that he would
return it, and concluded that it did and charged himself with
it as her administrator, he attempted, by so doing, to termi-
nate the bailment; and, by suing him as administrator—pro-
ceeding against him as alleged owner in his fiduciary capacity
—the plaintiffs assented to the termination of the contract of
bailment. This makes the defense rest upon a claim of title
independent of any contractual relation with the plaintiff,
express or implied, to which the plaintiff opposes a hostile
claim to the right of possession, based upon the fact of find-
ing. Duty to make demand before suing arises out of con-
tract between the parties, and obtains when no duty to per-
form devolves upon the defendant until request has been
made. Thus demand need not be shown when the taking
was wrongful, although the tort might be waived and *as-
sumpsit* maintained on the implied promise to pay the value
of the property. 21 Ency. Pl. & Pr. 1083. Mutual termi-
nation of the contract of bailment as suggested justifies,

omission of the allegation and proof of demand. "Demand of possession before commencing an action of replevin need be made only in those cases where it is necessary to terminate the right of possession in the defendant, and confer it upon the plaintiff. Where both parties claim title, and the right ·of possession is incident thereto, no demand is necessary." *Smith Co.* v. *McLean*, 24 Ia. 322. And under another apparently well settled rule, no proof of demand was necessary. When the party upon whom it is claimed to have been necessary to make a demand asserts in the action a claim or right, in respect to the subject matter of the controversy, so inconsistent with that of the adverse party, as to make it clear that a demand would have been unavailing, none is necessary. *Davenport* v. *Ladd*, 38 Minn. 545; *Huntsman* v. *Fish*, 36 Minn. 148; *Kellogg* v. *Olson*, 34 Minn. 103; *Newell* v. *Newell*, 34 Miss. 385; *Cox* v. *Delmas*, 99 Cal. 104.

Exception was taken to the action of the court in overruling an objection to the complaint, on the ground of insufficiency, after it had been amended; but, as it shows the object·of the action is to recover the gold in question, we think it sufficient. The statutory civil action in justice's courts is entirely informal and remains so in the circuit court on appeal.

For the errors herein noted, the judgment must be reversed, the verdict set aside, a new trial allowed and the case remanded. My reasons for remanding and not rendering judgment here are those stated in *Ruffner Bros.* v. *Duchess Ins. Co.*, 53 S. E. 943, in which my associates do not fully concur. They, however, for reasons which I do not undertake to state, unite in remanding this case.

*Reversed and Remanded.*