## DEADERICK *v*. OULDS.

### (*Knoxville.*    September 27th, 1887.)

1. LOST PROPERTY.  *What is.*  *Stranded saw-log.*

   An unmarked saw-log, carried by a river tide from the owner's premises into a mountain gorge, where it remained for over two years lodged in drift and unreclaimed, is *lost property.*

   Cases cited and distinguished: Laurence *v*. State, 1 Hum., 228; Pritchett *v*. State, 2 Sneed, 288.

   (See 4 Yer., 150–152; 6 Hum., 330; 9 Hum., 634; 4 Sneed, 356.)

2. REPLEVIN.  *For involuntary deposit.*  *Riparian owner.*  *Finder.*

   An involuntary deposit of a saw-log by high water, on the premises of a riparian proprietor, does not constitute him a special bailee thereof for the owner, nor invest him with a right to its possession superior to that of a *former finder*, who had set it adrift, pursued it, and removed it without such proprietor's consent.  The riparian proprietor cannot, in such case, maintain replevin against such finder for the log.

   Cases cited and approved: 7 Eng. L. & Eq., 424; 35 Am. Rep., 664.

3. SUPREME COURT PRACTICE.  *Reversal of Judge's finding for error of law.*

   A judgment rendered upon a special finding of the Circuit Judge, which discloses a misapplication of the law to the facts as found, will be reversed, and proper judgment rendered in this Court.

   (See 85 Tenn., 306, 345.)

FROM  WASHINGTON.

Appeal in error from Circuit Court of Washington County.  NEWTON HACKER, J.

Replevin for a saw-log, brought by Deadrick against Oulds, and decided below in favor of the

---

Deaderick *v*. Oulds.

---

plaintiff upon a special finding by the Circuit Judge. Defendant Oulds appealed.

S. J. KIRKPATRICK and I. E. REEVES for Deadrick.

H. H. INGERSOLL for Oulds.

LURTON, J. This is an action of replevin for the recovery of one walnut log. The defendant, Oulds, during the year 1883, cut and put in the headwaters of the Nollachucky River some eight hundred walnut logs, to be floated during the tides in the stream through the gorge in the mountains to a boom built by himself below the gorge. He undertook to have all of his logs branded with the letter "D," and while the proof shows it possible that some of his logs were not so branded, yet there is no sufficient proof to justify a finding that any of his logs were unmarked. Many of defendant's logs failing to reach the boom, he, in 1885, sent hands up into the gorge to search for logs which might have lodged upon the banks of the stream, or upon rocks or drifts. These hands found a number of logs stranded upon rocks, or caught by drifts, which were branded with the mark of defendant. With some of these marked logs found entangled in a drift was found the log now in controversy, it being without any mark or brand. This log was claimed by the servants of defendant for him, and it was again set adrift along with the branded logs, that it might be carried by the cur-

rents to the boom of defendant below the gorge. This boom gave way before all these reclaimed logs reached it, and defendant was obliged to rely upon catching his logs upon the banks of the stream and islands below the broken boom. In December, 1885, this unbranded log, together with a marked one, were cast by the current upon an island in the stream belonging to plaintiff, Deaderick, who notified defendant, Oulds, not to move it until he identified it as his own. Oulds did identify it by peculiar cracks upon the end as the same unmarked log found by his servants entangled in a drift within the gorge of the mountains, and placed by them in the river; he therefore, claiming it as his own, removed it from the island to the public road, where it was replevied by plaintiff. While the proof shows that between the time defendant's logs were placed in the river, and the finding of this unmarked log, that no other person is known to have placed walnut logs in this river above the gorge, to be floated down, yet it is shown that in 1883 one Wilson, who had cut walnut logs, to be sawed on his own premises above the gorge, lost by a high rise thirty unbranded logs, which had been carried down the stream. The contention of plaintiff, Deaderick, is that this unmarked log is more probably one of Wilson's lost logs, than one cut by Ould, and that as the log was found upon his lands that defendant cannot take the log therefrom without proving that he himself is the true owner. The proof fails to establish the log to be

one cut by defendant, Oulds, but it does satisfactorily show that it is the one found by defendant's servants, lodged in a drift within the mountain gorge, and set adrift in the stream, to be floated to defendant's boom below the gorge. On these facts can the plaintiff recover?

The claim of plaintiff rests upon the proposition that the log is a lost log, and that, being found upon his land, he can hold it against every one but the true owner. This claim is not well founded. This log was lost, and had been lost in all probability for two or more years when found entangled among the rocks and drift in the gorge by the servants of defendant. It was then claimed for defendant, and possession taken. This right of possession was not lost by the log subsequently drifting upon the land of plaintiff, and the defendant had a right to take and hold this log against all but the true owner, or one having a superior right of possession to that of the finder of lost property. It is undoubtedly true that it is not necessary in all cases that the plaintiff in trover or replevin must have an absolute right of property in the subject-matter of the litigation, but it is equally true that he must have a right of possession relatively superior to that of the defendant. Such a superior right of possession is not shown on the part of the plaintiff in this case. The prior finding and possession of the defendant is sufficient not only to defeat the contention of the plaintiff, but was a sufficient title to have supported an ac-

3

tion of replevin to recover the possession from any but the true owner. 2 Waite's Actions and Defenses, 234, and 6 Waite's Actions and Defenses, 153; Smith's Leading Cases, 7th Ed., 648, and cases cited.

Lost property found on the premises of another may be rightfully retained by the finder as against the owner of the premises. Thus, in *Bridges* v. *Hawksworth*, 7 Eng. L. and Eq., 424, the plaintiff, being in the shop of the defendant, picked up a parcel containing bank notes. The defendant, at the request of the finder, took charge of the notes to hold for the owner. After three years, no one having claimed them, the defendant refused to deliver them up to the plaintiff. The Court held defendant liable in trover for the notes.

So, in the case of *Hamaker* v. *Blanchard*, 90 Penn. St., 377, reported in 35 Am. Rep., 664, a servant in a hotel found a roll of bank notes in the public parlor. Upon suggestion of the proprietor of the hotel, that they belonged to a certain guest, they were delivered to the master for the guest. Proving not to be the property of the guest, the servant demanded the notes from the master, who refused to return them. It was held that she could recover them from the owner of the premises. To the same effect are the cases of *Durfee* v. *Jones*, 23 Am. Rep., 528, and *Tancil* v. *Seaton*, 26 Am. Rep., 380.

It is essential, however, in such cases that the property must be *found;* that is, it must, at the

time when the finder came upon it, have been in
such a situation as to clearly indicate that it was
*lost*, and not voluntarily placed by the owner where
it was found, by carelessness or forgetfulness. If
it was evidently laid where it was found, it then
becomes the duty of the owner of the premises to
keep the property for the owner, as in such cases
he is treated as a *quasi* bailee, and he may main-
tain trover therefor against the finder; as if a
pocket-book is found upon a desk or counter in a
store or bank, the presumption is that the owner
placed it there and forgot it. Waite's Actions and
Defenses, Vol. 6, 153–4, and cases cited.

In Tennessee, where a pocket-book was laid on
a counter by the owner and forgotten, it was held
that it was constructively in the possession of the
owner, and larceny could be maintained against the
owner of the premises who took the book, know-
ing the owner. *Lawrence* v. *State*, 1 Hum., 228;
*Pritchett* v. *State*, 2 Sneed, 288.

This log was not unintentionally laid or depos-
ited by the owner on the land of plaintiff, and
hence he was not a *quasi* bailee for the owner,
and cannot hold against the superior right of de-
fendant, growing out of his prior possession and
earlier finding of the log.

The distinction which undoubtedly exists between
the rights of a riparian proprietor to drift-wood and
other accretions which may drift upon his land,
and the finding by a stranger, upon the premises
of another, of articles dropped, need not be dis-

cussed here, for a riparian proprietor could not detain property stranded upon his bank as against either the true owner, or one having a superior right of possession by reason of an earlier possession.

His Honor, the Circuit Judge, tried this case without the intervention of a jury, and decided in favor of the plaintiff. In his special findings he held that, under the facts as above detailed, the plaintiff, Deaderick, was a special bailee, and as such entitled to hold the log as against all but the true owner. In this we think he committed an error of law.

The case will be reversed, and judgment rendered here in favor of the defendant.