# A. W. FOSTER v. FIDELITY SAFE DEPOSIT COMPANY, Appellant.

### Division One, March 2, 1915.

1. **MISLAID MONEY: Rightful Custodian: Ownership.** Where money has been intentionally placed on a desk in a safety deposit vault, and carelessly or forgetfully left there, and has been picked up there by a customer who has a lock box in the vault, and in examining his own papers discovers it, and leaves it with the company owning the vault to be delivered to the true owner when found, in a subsequent suit by him against the company for the money, the question of who owns the money is not in the case, but the question for adjudication is, who is the rightful custodian, and who was in possession when it was picked up by plaintiff?

**FINDING LOST MONEY: Possession.** Money in the possession of another cannot be found, in the sense of the law of lost property, for the reason that it is not lost.

3. **MISLAID MONEY: Placed on Desk.** Money discovered in a drawer, or on a table, or on a desk where money and valuable papers are customarily handled, will be considered as having been placed there purposely by the owner, and is not classed by the law as lost property. The circumstance of its being afterwards forgotten does not relate back and characterize the original act. But having been purposely placed on the desk, and then through forgetfulness or inattention left there, it was left in the possession or (better) the protection of the house.

4. ——: ——: **Right to Possession.** Plaintiff had a compartment rented in defendant's safety deposit vault, and took therefrom his box in the usual way, and was admitted by defendant's attendant through an automatically locking door into a private room reserved for the use of customers while examining their papers. On the corner of the desk in that room he noticed an envelope which "seemed a little puffy." He looked into it, and saw it contained $180 in paper money. Neither the envelope nor the money bore any name or identifying mark. He took his box back to the vault, and supposing the money belonged to some of defendant's customers handed it over to one of its officers to find the owner, but after several years of endeavor defendant has not found the owner, and plaintiff sues for the money. *Held*, first, that the provisions of the statute relating to the specific duties of the finder of lost personal property (Sec. 8268ff, R. S. 1909) are inapplicable because

the money, was not lost, but having been intentionally placed on the desk, was merely left in the constructive possession of the defendant, seemingly by inattention and forgetfulness; and, *second,* the money, both before it was discovered by plaintiff and after it was handed by him to defendant's officer, was in possession of defendant, who is its rightful custodian until the true owner is found, and plaintiff has no right to recover possession of it.

Appeal from Jackson Circuit Court.—*Hon. John I. Williamson,* Judge.

REVERSED.

*Bowersock, Hall & Hook* and *Robert B. Fizzell* for appellant.

(1)    The envelope containing the money in question could not have been lost so as to constitute the plaintiff the finder thereof, because it was discovered upon a desk in defendant's coupon room where it had been placed by a preceding occupant. Hoagland v. Amusement Co., 170 Mo. 342; Loucks v. Gallogly, 23 N. Y. Supp. 126; McAvoy v. Medina, 93 Mass. 548; Lawrence v. State, 1 Humph. (Tenn.) 228; Kincaid v. Eaton, 98 Mass. 139; Haymaker v. Blanchard, 90 Pa. St. 377, 35 Am. Rep. 664; Deadrick v. Oulds, 86 Tenn. 14; Bank v. Pleasants, 6 Wharton (Pa.), 375; 19 Cyc. 539; 19 Am. & Eng. Ency. Law (2 Ed.), p. 597.    (2) A safe deposit company is entitled to the custody of all valuables left on its premises by a customer regardless of whether such goods are discovered by an employee of such company or by a third party. The nature of the business of a safe deposit company, the supervision it exercises over its premises, its intent to exercise possession and control of all valuables left thereon, and the interest of the company's depositors make it imperative that the company be made the custodian of such valuables. If it be held that property left on the premises of a safe deposit company is

lost, then the finder is entitled thereto as against the company, even though such finder be an employee. Bowen v. Sullivan, 62 Ind. 281, 30 Am. Rep. 172; Haymaker v. Blanchard, 90 Pa. St. 377, 35 Am. Rep. 664; Tatum v. Sharpless, 6 Phila. (Pa.) 18. Accordingly, such finder could not turn over the property to the company to hold for the true owner, but must at once begin to advertise said property as a step toward making his title complete and divesting entirely the ownership of the loser. R. S. 1909, secs. 8268-8273.

*Garnett & Garnett* for respondent.

(1)  The law is well settled and the rule is universal that the finder of an article of which the owner is unknown has a valid title to it against all the world except the true owner, and that the place where, or the premises upon which, the article is found constitutes no exception to the rule. The defendant does not and cannot controvert this proposition. 19 Am. & Eng. Ency. Law (2 Ed.), 581; Danielson v. Roberts, 44 Ore. 108; Weeks v. Hackett, 104 Me. 264; Kuykendall v. Fisher, 61 W. Va. 87; Bowen v. Sullivan, 62 Ind. 281; Hamaker v. Blanchard, 90 Pa. St. 377; Durfee v. Jones, 11 R. I. 588; Tancil v. Seaton, 28 Gratt. 601. (2)  While conceding the foregoing proposition, defendant contends that the "money was not lost so as to constitute plaintiff the finder thereof" and cites cases attempting to define the word "lost," wherein a different question was before the court, than the one at bar. Now "lost" is a relative term. An article may be lost in one sense and not in another. In a controversy between the finder and a third party, if a definition should be attempted it would be that "an article is lost when the owner thereof is unknown." We all know where the money is in this case. It is the owner who can't be found. He is lost. Note the distinction in the cases cited by appellant and in the following cases: Tatum

v. Sharpless, 6 Phil. 18; Bridges v. Hawkesworth, 7 Eng. Law & Eq. 424; and the cases supra. The controlling element in cases like the one at bar is the fact that the owner is unknown. An obligation rests upon the person coming into possession of property when the owner is unknown. He is in duty bound to keep possession and make every effort to find the owner. This duty is recognized not only by the rules of common law, but enforced by the statutes of this State, which provides that the person finding any money, etc., "of the value of ten dollars or more the owner of which is unknown," shall make affidavit "that the owner is unknown to him." If in compliance with the statutes he advertises the property "and if no owner prove the property within one year after such publication, the same shall vest in the finder." "Lost and Unclaimed Property." Chap. 75, R. S. 1909; Bridges v. Hawkesworth, 7 Eng. Law & Eq. 424; Tatum v. Sharpless, 6 Phil. 18; Danielson v. Roberts, 44 Ore. 108; 2 Schouler Per. Prop., secs. 5 and 8 (4) The place in which an article is found may or may not be a material fact to be considered in determining whether or not the article was lost. Simply a question of evidence. 19 Am. & Eng. Ency. Law, 581. The place of finding is simply to be considered with all the other facts and circumstances in determining whether the article was lost or not. (5) No declarations of law were asked or given and no special finding of facts requested or made. The court after considering the probative force of the place where the money was found together with the other facts and circumstances in evidence, found the issues in favor of the plaintiff. "The court in trying issues of fact sits as a jury and gives a general verdict; and the only way in which its errors can be corrected, if it decides the law wrongfully, or makes a misapplication of the law to the facts, is to ask declarations of law or instructions, in order that we may see on what theory the court proceeded. To at-

temtp to review this case would be simply giving our opinion upon the weight of evidence, when no point of law was raised or saved in the trial court. *This we cannot do."* Weitandy v. Lemuel, 43 Mo. 322; Miller v. Bremke, 83 Mo. 163; Bank v. Tract. Co., 179 Mo. 648; Bethune v. Railroad, 139 Mo. 574; Wischmeyer v. Richardson, 153 Mo. 556. (6) "When the finder of a lost article has delivered it to a third person, to be kept for the owner, or for the finder in case the owner does not claim it, the finder, on refusal of the bailee to return the article, may recover it, if no claim has in the meantime been made by the true owner." 19 Am. & Eng. Ency. Law (2 Ed.), 580; Bridges v. Hawkesworth, 7 Enc. L. & Eq. 424; Bowen v. Sullivan, 62 Ind. 281; Tancil v. Seaton, 28 Gratt. 607.

BOND, J.—This case comes to this court on the dissent of one of the Judges of the Kansas City Court of Appeals to the decision of the majority of said court, and a request that it be certified here as being in conflict with two of our decisions. The facts and conclusions of law applicable to them are clearly and accurately stated in the following extracts from the decision of Judge ELLISON, speaking for the Kansas City Court of Appeals:

Mislaid Money.

"Defendant is a safe deposit company. It maintains individual safes or compartments which it rents to customers for the safe-keeping of money and other valuable articles. Each of these contains a box which may be withdrawn and in which the customer places his money, papers or other valuable articles. It requires two keys to open one of these safes, one carried by the customer and the other by the attendant in charge. Its place of business is on the same floor and in practically the same room occupied by a banking institution known as the Fidelity Trust Company; it being separated therefrom by a steel fence. A customer enters from the street through the bank, thence

through a steel gate operated by an attendant, thence into a vault through another gate opened by an attendant. Here he and the attendant open his compartment, and he takes out his box and goes to a small private room containing a desk and chair. On the desk are some envelopes, blotters and a pair of scissors. He is admitted into this by an attendant, and when he leaves, the door closes and locks automatically; whereupon the attendant unlocks it and makes the room ready for the next occupant.

"Plaintiff had a compartment rented of defendant, and on the afternoon of April 13, 1906, he took his box therefrom in the usual way, was admitted into one of these private rooms by the attendant, where he examined some papers in his box, and as he was about to leave the room he noticed an envelope lying on the corner of the desk 'that seemed to be a little puffy.' He looked into it and found it contained $180 in bills. Neither the envelope nor the money had any name or mark of identification. He took his box back to the vault, and supposing the money belonged to some of defendant's customers, handed it over to one of its officers to find the owner.

"Defendant keeps a record of the name of each customer and the day he takes his box from the vault, and it has written to each customer who took out his box on the day plaintiff discovered the money, and it has made diligent search for the rightful owner, but up to the time of the trial (30th November, 1910) had not found him. After a time plaintiff demanded a return of the money, and defendant refusing to deliver it, this action followed, in which plaintiff had judgment.

"Neither plaintiff nor defendant claims to be the owner of the money. Plaintiff makes no pretence that the money was intentionally abandoned by the owner, and if he should be successful in this action, he must institute certain proceedings prescribed by sections

8268-8273, Revised Statutes 1909, concerning lost property, whereupon, if no owner appears by the end of a year, he would become the owner by force of the law. The question for decision, therefore, is not who owns the money, but which of the parties is entitled to the possession of it; or, better stated, which is the proper custodian. Plaintiff, to sustain himself, must show that he found money which was lost. Property in the possession of another cannot be found, in the sense of the law of lost property, for the reason that it is not lost. Even if discovered in possession of the thief who stole it, the discoverer has not found it, for the reason that being in the thief's possession, it is not lost. If, therefore, the money in controversy was in the possession of defendant when discovered by plaintiff, plaintiff could not have found it, as that word is understood in the law of lost property. . . .

"Now in whose possession was the money when discovered by plaintiff? It could scarcely have been more in defendant's possesison, unless it had been in the pocket of one of its officers. It was not only in defendant's place of business, but was in a separate apartment, from which the public was excluded; and, more than that, it was on a desk in a little private compartment kept under the immediate and constant guard and supervision of one of defendant's attendants. A roguish street urchin, if by possibility he had gained access to this place and discovered the envelope on the desk, would have had the same right to it that plaintiff had. Suppose the attendant had observed the boy as he found it; would he have been justified in letting him carry it off? Would it not have been his duty to assert defendant's right of possession and to take it from the boy? Would not the real owner, had he afterwards appeared, have had legal grounds of complaint against defendant, as his bailee, for gross neglect in allowing the money to be carried off in full view? It is no answer to this suggestion nor does it show any dis-

tinction between the supposed case and the real one, to say that in the former the owner appeared and in the latter he had not. For, whatever legal right there was to possession of the money, came into existence the moment plaintiff discovered it. If it was in defendant's possession then, it remained in its possession, and it should hold it for the owner, subject to such rights and duties as arise under the law of bailment or trusteeship. If plaintiff found the money, in the legal sense, then he was entitled to the possession, no matter whether the owner was afterwards ascertained or not. He was entitled to the possession as a step in his ultimate ownership, if no owner appeared after he had gone through with the statutory process as to lost property. If plaintiff was the finder of lost property, in the legal sense, he was under no duty nor obligation to leave it with defendant to ascertain the owner, or to say anything about it. . . .

"So, therefore, we repeat that the rights of each of the parties to this controversy were full grown the moment plaintiff discovered the money. The subsequently developed fact of no owner being found up to the date of this action, does not affect the status of either party as to the right of possession at that time. And the question on the supposed case recurs: Would it have been the duty of the attendant to have asserted a right in defendant to possession as against the urchin's claim of finding it? The answer is plain. If the money was lost, in a legal sense, defendant had no sort of possession of it and owed no duty towards it and had no right to question the honesty of the finder. But if defendant did owe a duty to it, then it was in its custody and plaintiff could have no claim as a finder; for it is not within the bounds of reason or good understanding to say that a thing is lost which is in the possession of another and under that other's protection.

"Authority is abundant and uniform in support of defendant's possession and right of custody. Beginning first with our own State, we have the case of Hoagland v. Amusement Co., 170 Mo. 335, an action for unlawful arrest and assault and battery. Defendant operated a summer place of amusement and refreshment in the open air, all parts of which were free and open to the public except a theatre which was fenced off from other parts. Plaintiff attended the theatre and then took a seat at one of the many tables scattered about the premises, where he found a pocketbook lying on the ground. In attempting to leave the pocketbook at the ticket office, which he found closed, he got into a dispute with some of the defendant's employees, who claimed to be the proper custodians of the pocketbook, and the assault he complained of was made. In the course of the opinion, the Supreme Court stated the law as to lost property in these words (italics ours): " 'Now, the authorities as a general rule hold that money or other property voluntarily laid down and forgotten is not, in legal contemplation, lost, and that the owner of the shop, bank or other place where it is left is the proper custodian rather than the person who happens to discover it, as well also as to all other persons except the owner.'

"But plaintiff insists that this statement of the law is a mere *dictum*, made without careful consideration of the cases cited in support of it. Passing by any discussion with plaintiff as to whether the proposition is *dictum*, and passing by any question that, *dictum* or not, it is our duty to follow it, an examination of the authorities on the question leaves no doubt that what the court stated in Hoagland v. Amusement Co. has been recognized as the law wherever a like question has arisen. It seems to us that counsel treats too lightly the distinction made between conditions in which money or other valuables may be discovered by an al-

264Mo7

leged finder. Property may be separated from the owner by being abandoned, or lost, or mislaid. In the first instance, it goes back into a state of nature, or, as is most commonly expressed, it returns to the common mass and belongs to the first finder, occupier or taker. In the second instance, to be lost, it must have been unintentionally or involuntarily parted with, in which case it is also an object which may be found and the finder is entitled to the possession against every one but the true owner. But, if it is intentionally put down, it is not lost in a legal sense, though the owner may not remember where he left it, and cannot find it. For 'the loss of goods, in legal and common intendment, depends upon something more than the knowledge or ignorance, the memory or want of memory, of the owner, as to their locality at any given moment.' [Lawrence v. State, 1 Humph. 228.] From these uniformly recognized rules of law on the subject of lost property has naturally sprung the importance of the condition or situation in which property is alleged to have been found. And the law in this instance, as in so many others, founds its rule upon the natural action of men and not upon a possibility. Thus, articles of property may be such and circumstances may be such as to make clear they have been voluntarily abandoned by the owner. But normally, men do not voluntarily abandon their money. Therefore, if money be discovered in the highway, or on the ground, or on the floor, it will not be considered as abandoned, nor will it be considered as placed there voluntarily, for that would be unnatural, but as having been lost—that is, casually and unknowingly dropped. But if it be discovered in a drawer, or on a table, it will be considered as having been placed there purposely by the owner, and it is not classed by the law as lost property. The circumstance of it being afterwards forgotten does not go back and characterize the original act.

"Therefore if a person goes into another's public place to transact business with him and places his money on a table or desk and comes away forgetting he had done so, he has left it in the possession of the owner, or, as is expressed, he has left it within the protection of the house. This rule has been stated and conceded to be established law, in a number of cases where the situation of the property was such as to make it lost property. We will first refer to these. A case referred to with much frequency is that of Bridges v. Hawkesworth, 7 Eng. L. & Eq. 424. There the plaintiff, being in the defendant's public shop, found money on the floor, and it was held he was entitled to the possession as finder. The court saying that 'the notes never were in the custody of the defendant, nor within the protection of his house, before they were found, as they would have been had they been intentionally deposited there.' All the cases (we have not found an exception) which recognize the right of the finder of property in a public house or place of business, recognize the rule that if the money is discovered on a table, or desk, or in a drawer, it is not lost in a legal sense, but is within the possession and protection of the owner of the house.

"Thus in Hamaker v. Blanchard, 90 Pa. St. 377, a servant found money on the floor of one of the public parlors of a hotel, and it was held that she was entitled to it against every one but the true owner, the court, however, stating: 'But property is not lost, in the sense of the rule, if it was intentionally laid on a table, counter or other place, by the owner who forgot to take it away, and in such case the proprietor of the premises is entitled to retain the custody. Whenever the surroundings evidence that the article was deposited in its place, the finder has no right of possession against the owner of the building.' The same distinction is made in the instance of money having been left in an old safe and thence had slipped or been acci-

dently shoved in a crevice in the safe and thus become hidden. [Durfee v. Jones, 11 R. I. 588.] And where money was found in an envelope on the floor of a paper mill, which manufactured paper from old paper, the owner of the mill claiming that he had bought the money with the envelope. [Bowen v. Sullivan, 62 Ind. 281.]

"But the rule stated by the Supreme Court in the Hoagland case does not depend for support alone on mere recognition, as in the foregoing cases. It has been applied uniformly in cases which are like the one at bar. Thus in McAvoy v. Medina, 11 Allen, 548, the court said: 'But this property is not, under the circumstances, to be treated as lost property in that sense in which a finder has a valid claim to hold the same until called for by the true owner. This property was voluntarily placed upon a table in the defendant's shop by a customer of his who accidently left the same there and has never called for it. The plaintiff also came there as a customer, and first saw the same and took it up from the table. The plaintiff did not by this acquire the right to take the property from the shop, but it was rather the duty of the defendant, when the fact became thus known to him, to use reasonable care for the safe-keeping of the same until the owner should call for it.' And in Kincaid v. Eaton, 98 Mass. 139, the court went the length of holding that even where the owner left his pocket-book on a desk in a bank, and, supposing he had lost it, advertised a reward to anyone who found it, he who discovered it on the desk was not entitled to the reward as it had not been lost and was not found. The court said that: 'To discover an article voluntarily laid down by the owner within a banking house, and upon a desk provided for the use of such persons having business there, is not the finding of a lost article. The occupants of the banking house, and not the plaintiff, were the proper depositaries of an article so left. The plaintiff has not established a legal

right to the reward according to the terms by which it was offered, and therefore cannot retain his verdict.'

"The case of Loucks v. Gallogly, 23 N. Y. Supp. 126, bears great likeness to the one before us. There the plaintiff discovered fifty dollars in bills on a desk in the National Exchange Bank of Albany, and handed it to the bank teller to hold for the owner, and none made claim. Two years passed and plaintiff sued the teller. The court said that: 'It has been held that in order to constitute legal losing the thing must have been actually lost by the owner, and not merely mislaid; that is, he must not voluntarily and purposely have laid it away in a certain place for a time, with the intention of retaking it, and then have forgotten where he had placed it; but it must have involuntarily and accidentally, as respects the owner, gotten out of his possession.'

"The case of Deaderick v. Oulds, 86 Tenn. 14, concerned the right to possession of a lost log. It seems that defendant found it stranded upon rocks in a stream, and that he turned it loose into the stream to float down to his boom below; but before it reached there the boom broke and the log floated onto and lodged upon an island belonging to plaintiff. Plaintiff claimed it as a lost log and as owner of the land upon which it lodged. Defendant claimed it as the original finder and took it from the island; whereupon plaintiff brought replevin. The court, in the course of an opinion by Justice LURTON, now of the United States Supreme Court, said, in cases of alleged lost property, that: 'It is essential, however, in such cases that the property must be *found;* that is, it must, at the time when the finder came upon it, have been in such a situation as to clearly indicate that it was *lost,* and not voluntarily placed by the owner where it was found, by carelessness or forgetfulness. If it was evidently laid where it was found, it then becomes the duty of the

owner of the premises to keep the property for the owner, as in such cases he is treated as a quasi-bailee, and he may maintain trover therefor against the finder; as if a pocketbook is found upon a desk or counter in a store or bank, the presumption is that the owner placed it there and forgot it.'

"A case to which we have already referred (Lawrence v. State, 1 Humph. 228) is a leading one on this subject. At the common law, lost property could not be the subject of larceny and in that case Lawrence insisted the money he was accused of stealing was lost. The circumstances were that he was a barber and found a pocketbook containing $480 in money, on a table in his shop. The court denied his defense, and among other things, said that: 'To place a pocketbook upon a table, and to omit or forget to take it away, is not to lose it in the sense in which the authorities speak of lost property.'

"The mind refuses consent to the proposition that one may go into another's house, whether business or residence, and take away anything he discovers there which does not belong to the owner. If one visits an acquaintance socially at his home, and comes away leaving some article on a table, he has left it in the possession of such acquaintance, and it seems absurd to say that another visitor would have a right to take the property from the house under the claim that he had found it."

We approve and adopt the foregoing opinion of the Kansas City Court of Appeals, only adding thereto a word as to the statutes of this State referring to finders of lost property. [R. S. 1909, sec. 8268 et seq.] These provisions of the statute relate to the specific duties of the finder of lost personal property who does not know the true owner and provide a statutory method for the acquisition of title. They are inapplicable to the facts in this case, because the property here was *not* lost. It was merely left in the construc-

tive possession of the defendant—seemingly placed by the owner on the desk provided by the Safety Deposit Company for the uses of its customers, and by inattention or forgetfulness not replaced in the box from which it had been taken when it was laid on the desk. This is the fair, natural and logical inference afforded by the admitted facts and testimony in this case, and demonstrates that the money left was legally as much in the possession of the defendant thereafter as it was before being removed from the safe deposit box. Hence, the plaintiff only did his duty when he placed it in the actual possession of defendant. The attitude of the defendant is therefore that of a lawful custodian of the money *for the benefit of the true owner*. This trust it cannot repudiate, and it should exercise *due* care to discover the real owner and deliver the property to him. We do not understand that appellant claims any other rights in the matter, and what we have said is simply to impress the duty cast on it by law to adopt every means suggested by prudence, intelligence and good faith to restore this money to its rightful owner.

The judgment of the circuit court is reversed. All concur.