MANUFACTURERS SAFE DEPOSIT COMPANY, Plaintiff, *v.* LOUIS COHEN, as Administrator of the Estate of RAY COHEN, Deceased, et al., Defendants.

LOUIS COHEN, as Administrator of the Estate of RAY COHEN, Deceased, Plaintiff, *v.* MANUFACTURERS SAFE DEPOSIT COMPANY, Defendant.

Supreme Court, Special Term, New York County, November 29, 1950.

*Newman & Bisco* for Manufacturers Safe Deposit Company, plaintiff.

*Thomas J. Williams* for Louis Cohen, as administrator, defendant.

*John P. McGrath, Corporation Counsel (George P. Hennessy, Nathan B. Silverstein, Seymour B. Quel* and *Fred Iscol* of counsel), for Frank Leuci, as Property Clerk of the Police Department of the City of New York, defendant.

COHALAN, J. Rival claimants to found money are before the court. Two separate actions were consolidated and tried as one. The result here announced decides both cases. For convenience the safe-deposit company will be referred to as " plaintiff ", the other plaintiff and defendant as " defendant Cohen ", the defendant property clerk of the police department of the City of New York as " property clerk ".

In an endeavor to ascertain the ownership here litigated, the parties submitted an agreed statement of facts to the Appellate Division, and finally to the Court of Appeals. The latter court, in *Cohen* v. *Manufacturers Safe Deposit Co.* (297 N. Y. 266), refused to decide the controversy for reasons therein stated, but did indicate certain tests which should be applied in this trial court.

The facts common to both litigations as presented at the trial are: The safe-deposit company is wholly owned by a bank of a similar name. They maintain a branch bank and safe deposit

on 125th Street. The main office and major portion of the premises are the bank's; two rooms entered through the bank's outer office are operated by the safe-deposit company. In the first of these rooms, being the one nearest to the outer office, the money was found on the floor of a booth. The second or inner room is open only to bank or safe-deposit officials and persons who have safe-deposit boxes in that vault. Nothing happened in that second room which is of moment here. The safe-deposit company has one employee at the premises. His relief is a bank employee. His controlling superior at the premises is the local bank manager.

Ray Cohen, now deceased, found a sum of money on the floor of a booth in the outer room of the safe-deposit company. The bank manager tells us that she gave it to him and that he sent it downtown to the safe-deposit company's main office. His testimony in this respect is confirmed by the official of the safe-deposit company who at the downtown office received the sealed package, which has been retained in that office. Nothing further is known as to the details of the finding by Mrs. Cohen. She is dead. The safe-deposit company's sole employee says that he was at lunch when the incident occurred. His relief (the bank receptionist) tells the same story. The manager says Mrs. Cohen gave him the money at one o'clock on a Monday. He did not give her a receipt nor anything else to indicate that she might have a claim on the money, nor did he make any investigation as to the identity of the persons who had entered the safe-deposit company's outer room up to one o'clock. There were records then available which would disclose, at least in part, the identity of such persons. The room on that day and on several days prior thereto had been used by the safe-deposit company's sole representative (acting in this instance for the bank) to solicit new accounts and to sell United States bonds. The testimony shows that at least eight new accounts were opened on that Monday and some thirteen on the prior Saturday. The premises were available on both the Saturday and the Monday to all persons who were (1) holders of boxes in the vault, (2) possible purchasers of bonds, or (3) possible new accounts. Neither the bank nor the safe-deposit company has to date inquired of its 1,400 safe-deposit box holders or of any of the persons known to have opened such new accounts on the day in question, as to any interest they might have in the money found. The testimony is that new accounts could be opened either by check or with cash.

The opinion of the Court of Appeals suggests many other inquiries: (1) that the function of the safe-deposit company be ascertained; (2) that it be determined whether the money was lost or merely mislaid, and (3) whether attendance at the office of the bank and safe-deposit company was limited to customers and employees.

The testimony convinces me, as trier of the facts, that on that date the safe-deposit company and the bank between them, and acting through this one employee, were in this one room attending to the ordinary functions of the safe-deposit company, soliciting new accounts and endeavoring to sell bonds; that the public who would fall into any one of these classes had ready access to that room through identification at its entrance gate; that the money was not merely mislaid, this because of the location of the place at which it was found. The testimony shows it *on the floor* of the booth, not on any table or other normal resting place. There were records made but, through carelessness difficult to understand, in view of the fact that the bank manager had knowledge of the loss at one o'clock on the day in question, those records in their entirety are not now available.

The court concludes that the use and operation of the premises was a public one and that the premises on which it was found are public premises within the meaning of section 1300 of the Penal Law of the State of New York and section 435–4.1 of the Administrative Code of the City of New York. It will be noted that these sections deal with the punitive effect of misappropriation of articles found and require the reporting and the deposit of lost property, providing a penalty for the failure to do so.

The local law provision is the only guidepost to the question of temporary possession, but does furnish an answer to that problem as here presented. The wisdom of having a direction as to lost property in a city as large as this cannot be questioned. Police department statistics reveal that in the course of a year many thousands of articles ranging from autos to trinkets, are reported lost and turned over to the property clerk. A general compliance with this rule will furnish to all interested persons a definite place for the loser to start his search for lost property. The spirit of these sections is to facilitate the return of lost property, and everything should be done in accordance therewith to make the reporting of such loss and the reclaiming of the article in question less difficult.

Our Civil Rights Law (§ 40) lists in great detail places regarded as public, in the sense that all of the public have the same rights therein. In the listing are included colleges, public libraries, stores, as well as inns, theatres and other places of amusement. All these places invite the public. So does a bank and so does a safe-deposit company. And so in this instance did the bank and safe-deposit company, acting in concert as to the sale of bonds and the soliciting of new customers.

The property is to be turned over to the property clerk, to be held in accordance with obligations under the law, and if no true owner appears, it is to be then given to the defendant Cohen as administrator of the finder.