BETTY DOLITSKY, Plaintiff, *v.* DOLLAR SAVINGS BANK, Defendant.

Municipal Court of the City of New York, Borough of The Bronx, Small Claims Part, December 16, 1952.

*Frederick W. Gerbracht,* for defendant.

*Betty Dolitsky,* plaintiff in person.

TRIMARCO, J. This is an action to recover the sum of $100 allegedly found by the plaintiff in a booth wholly contained within the safe-deposit area maintained by the defendant, Dollar Savings Bank of the City of New York, sued herein as Dollar Savings Bank, at its main office.

Defendant maintains a safe deposit vault in the basement of its main office at No. 2530 Grand Concourse, Bronx, New York City, in an area of the bank which is walled off from all other parts of the bank and used exclusively for safe-deposit business. No other function of the bank is carried on in this restricted area. In order to be eligible to rent a safe-deposit box the prospective renter must have a savings account in the bank and access to the aforesaid restricted area is limited to box renters, officers and employees of the bank whose duties require them to be there, legal representatives of deceased box renters and duly authorized representatives of city, State and Federal agencies.

A metal grill door in the wall of the restricted area permits access to the safe-deposit vault, the door of said vault being about fifteen feet inside the wall of the restricted area. To the left of the vault door and in the space between the safe-deposit vault and the aforesaid wall and wholly contained within the restricted area there are booths for the use of box renters where a renter may transact his or her business in private.

Entrance to the safe-deposit area is through a metal grill door in the wall, which separates the area from all other parts of the bank. On either side of the said metal grill door there are apertures or openings which are also protected by metal grills.

When a box renter requests access, he or she applies at the opening to the left of the metal grill door. The box renter is given an access slip by a vault attendant and is directed to place the box number and his or her signature thereon. The box renter is then directed to go to the opening to the right of the metal grill door to have the signature and the box number on the access slip checked by another vault attendant against the vault records. The box renter then presents the verified access slip to a vault attendant at the metal grill entrance door. The vault attendant inspects the access slip to ascertain if the data thereon has been checked against the vault records, and if such is the case, the door is opened and the renter is permitted to enter the restricted area. The attendant then escorts the renter to the renter's safe in the vault, and after receiving the renter's key and in the renter's presence, he unlocks the safe and removes the renter's safe-deposit box. He then escorts the renter to a booth, located in the aforesaid restricted area for the exclusive use of box renters. The booths are furnished with a table and a chair and above the table, racks attached to the wall of the booth contain pamphlets describing certain services performed

and facilities provided by the bank, and also inventory forms for the convenience of the box renter in making an inventory of the contents of the safe-deposit box. When the vault attendant escorts the box renter to the booth, he places the renter's box on the table therein and leaves the booth. The door of the booth closes automatically after the vault attendant leaves and when the box renter has completed his or her business in the booth, the vault attendant is notified and in the renter's presence the box is returned to the safe in the vault.

Before any other box renter is placed in a booth which has been used by another renter, a vault attendant examines the booth to see if any papers or other property of the last occupant have been left on the table or have fallen on the floor of such booth. If anything is found in the booth it is turned over by the vault attendant to his superior.

On November 7, 1951, at about 12:15 P.M. the plaintiff, Betty Dolitsky, a renter of a box in the safe-deposit vault maintained by the defendant as aforesaid requested access to her safe-deposit box. She filled out an access slip and after the data thereon had been checked against the defendant's records and her identity established to satisfaction of the defendant the metal grill door was opened and she was permitted to enter the restricted area. An attendant, then took her inside the vault and after she produced her key her box was removed in her presence and she was escorted to booth number 2 in said restricted area. After she had completed her business in booth 2, she informed a vault attendant in the employ of the defendant that she had found a $100 bill which was enclosed in a folder advertising Bank Life Insurance, which she had removed from a rack attached to the wall above the table in booth number 2. The vault attendant turned over the bill to his superior and a memo of the details of the finding of the bill was made. The rightful owner of the bill has not as yet made a claim for it and it remains in the possession of the defendant. The plaintiff contends that since the rightful owner has not appeared to claim the bill that she is entitled to it as a finder of property and has made demand upon the defendant that the bill be turned over to her.

The defendant contends that the facts of the case disclose that the bill was *mislaid* and that being the case the finder thereof can never acquire title to the same. The defendant further contends that it has the duty to retain possession of the property indefinitely pending receipt of a claim for the same by the **rightful owner.**

### DISTINCTION BETWEEN " LOST PROPERTY " AND " MISLAID PROPERTY " AT COMMON LAW.

At common law property was lost when possession had been casually and involuntarily parted with, so that the mind had no impress of and could have no knowledge of the parting. Mislaid property was that which the owner had voluntarily and intentionally placed and then forgotten. (36 C. J. S., Finding Lost Goods, § 1, pp. 769–770; Note 9, A. L. R. 1388; *Kincaid* v. *Eaton,* 98 Mass. 139 [1867]; *State* v. *Courtsol,* 89 Conn. 564 [1915].) The New York cases have consistently recognized this classification. (*People* v. *M'Garren,* 17 Wend. 460 [1837]; *Loucks* v. *Gallogly,* 1 Misc. 22; *Foulke* v. *New York Consolidated R. R. Co.,* 228 N. Y. 269.)

Property in someone's possession cannot *be found in the sense of common-law lost property.* If the article is in the custody of the owner of the place when it is discovered it is not lost in the legal sense; instead it is mislaid. Thus if a chattel is discovered anywhere in a private place where only a limited class of people have a right to be and they are customers of the owner of the premises, who has the duty of preserving the property of his customers, it is in the possession of the owner of the premises. (36 C. J. S., Finding Lost Goods; *Foster* v. *Fidelity Safe Deposit Co.,* 264 Mo. 89 [1915]; *Silcott* v. *Louisville Trust Co.,* 205 Ky. 234 [1924].)

In the case of mislaid property discovered on the premises of another, the common-law rule is that the proprietor of the premises is held to have the better right to hold the same for the owner (*Loucks* v. *Gallogly,* 1 Misc. 22, *supra*) or the proprietor has custody for the benefit of the owner (*Silcott* v. *Louisville Trust Co.,* 205 Ky. 234, *supra*; *Foster* v. *Fidelity Safe Deposit Co.,* 264 Mo. 89) or the proprietor is the gratuitous bailee of the owner (*Foulke* v. *New York Consolidated R. R. Co.,* 228 N. Y. 269, *supra*; *Kincaid* v. *Eaton,* 98 Mass. 139, *supra*). The effect of the above cases, despite their different description of the relationship, is that the proprietor is the bailee of the owner. Thus the discoverer of mislaid property has the duty to leave it with the proprietor of the premises, and the latter has the duty to hold it for the owner. New York statutory requirements do not change this rule.

The bank is a gratuitous bailee of mislaid property once it has knowledge of the property (*Foulke* v. *New York Consolidated R. R. Co.,* 228 N. Y. 269, *supra*; *Kincaid* v. *Eaton,* 98 Mass.

*139, supra*). As such the bank has the duty to exercise ordinary care in the custody of the articles with a duty to redeliver to the owner. (8 C. J. S., Bailments, § 28; 35 Harv. L. Rev. 873.)

The degree of diligence exacted of each of the several classes of bailees, in respect to the care of the thing bailed, has ordinarily no application to the liability of the bailee in respect to its return or delivery. (*Kowing* v. *Manly,* 49 N. Y. 192 [1872]; *Jenkins* v. *Bacon,* 111 Mass. 373 [1873].) A misdelivery by the bank even if procured by fraud and made without negligence, would be a conversion (35 Harv. L. Rev. 873; *Rubin* v. *Huhn,* 229 Mass. 126 [1918]; *McKillop* v. *Reich,* 76 App. Div. 334 [2d Dept., 1902]; *Cowen* v. *Pressprich,* 117 Misc. 663).

No authority has been discovered as to how long a gratuitous bailee in the bank's position is expected to hold mislaid property for the owner. The broad statement of the cases that the holder of mislaid property is a gratuitous bailee for the owner seems to indicate that the bank would have to hold the property indefinitely.

The recent case of *Manufacturers Safe Deposit Co.* v. *Cohen* (200 Misc. 334 [1950]) which held that property found on the floor of a booth located in an outer room used by a safe-deposit company in conjunction with a bank access thereto not being limited to box holders or officials of the safe-deposit company was lost property and as such should have been turned over to the property clerk of the police department, can be distinguished from the present case. In the *Cohen* case the court found that the booth on the floor of which the money was found was not located within the safe-deposit vault but rather in an outer room adjoining said vault and in a part of the bank which was accessible to the ordinary customer of the bank for the purchase of bonds and the opening of new accounts. As such the court considers the room in which the booth was located a public place not restricted to safe-deposit officials and persons having safe-deposit boxes in the vault. The case is further distinguished from the present case since its facts disclose that the money was found on the floor of the booth which indicated to the court that the money was not mislaid. The court points out that the testimony shows the money to have been found on the floor of the booth and not on any table or other normal resting place.

The testimony in this case establishes that the property was discovered by the plaintiff in a folder advertising Bank Life Insurance which the plaintiff removed from a rack attached to the wall of booth No. 2, which booth was wholly contained within

a restricted area used exclusively by the defendant for safe-deposit business and access to which was limited to box renters or their legal representatives, officers and employees of the bank and authorized representatives of city, State and Federal agencies.

Defendant's motion to dismiss plaintiff's complaint is granted.