Clyde E. MORGAN and wife, Helen Morgan, Plaintiffs-Appellants,

v.

Max WISER and Ed McClarty, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 1, 1985.

Application for Permission to Appeal Denied by Supreme Court Dec. 23, 1985.

Royce Taylor, Murfreesboro, for plaintiffs-appellants.

L. Wayne Bomar, Bomar, Shofner, Irion & Rambo, Shelbyville, for defendants-appellees.

## OPINION

CANTRELL, Judge.

This lawsuit concerns some gold coins allegedly found on the property of the appellants by the appellees. The Chancellor granted summary judgment to the appellees on the ground that the coins were treasure-trove and the appellees were entitled to them as a matter of law.

The appellants filed this action on January 16, 1984, naming the appellees as defendants and alleging that the appellees trespassed upon the Bedford County farm of the appellants, searched the premises with a metal detector, and found a cache of gold coins buried in an iron pot. The complaint sought a judgment requiring the defendants to return the coins or, in the alternative, for damages. The complaint did not allege that the appellants were the true owners of the coins.

In their answer, the appellees denied that they found any coins on property owned by the appellants and, in addition, raised the affirmative defense that the law of treasure-trove applied to any gold coins found by them. Therefore, the appellants alleged, they were entitled to the coins wherever they were found.

The appellants sought by discovery under Rule 26, Tenn.R.Civ.P. to establish where the coins were found. On the appellees' motion for a protective order, the Chancellor limited discovery until the issue of treasure-trove had been decided.

The appellees then made a motion for summary judgment on the ground that the coins were treasure-trove and that under the law governing rights to treasure-trove they were entitled to the coins. In support of their motion the appellees each filed an affidavit stating that they had in fact found some five dollar gold coins buried approximately eight to twenty inches below the surface of the ground in a place that

showed no recent digging. The coins, none of which was dated later than 1861, were covered with rust and appeared to have been buried in a container that had decomposed. Some of the coins were scattered about the area where the container appeared to have been located originally, but none of the coins was less than eight inches deep in the ground.

At the hearing on the motion for summary judgment the attorney for the appellants stipulated that the coins would qualify as treasure-trove but denied nevertheless that the appellees were entitled to them. The Chancellor, noting that Tennessee had not decided the question of treasure-trove by statute or court decision, adopted the rule set out in 1 Am.Jur.2d, *Abandoned, Lost, and Unclaimed Property* § 21:

> In this country, in the absence of legislation, the rule is that the title to treasure-trove belongs to the finder against all the world except the true owner, and the doctrine of the English common law in regard to treasure-trove has become merged into the law respecting the finding of lost property, insofar as the rights of the finder are concerned. The result is that the finder of treasure-trove has a right thereto as against the owner or occupant of the premises where it is found, and the fact that the finder is an employee of the owner of the premises where it is found does not affect his right.

Based on that rule the Chancellor dismissed the appellants' complaint.

We will first treat the appellants' claim that T.C.A. § 39–3–1111 governs this situation. That statute provides:

> Any person who severs and carries away from the land or building of another any property or thing attached thereto; or digs or severs and carries away from the lands of another any earth, stone, marble, slate, coal, copper, lead, iron, ore, or any other ore or metal; or enters upon the improved, enclosed, and/or cultivated lands of another and severs from the soil and carries away any fruit, vegetables, farm products or produce, matured or growing thereon; for the purpose of depriving the owner thereof and appropriating the same to his own use shall be deemed guilty of, and punished as in case of larceny.

We are of the opinion that the statute does not apply in this case. Although it is arguable that a treasure hunter who finds gold coins on the land of another and carries them away is guilty of digging or severing and carrying away "metal" from the land, we think the statute was passed to punish those who steal things that are affixed to the realty or things that are in or upon the realty in a natural state. The substance of the offense described in the statute is the taking and carrying away of the property belonging to the owner of the land. Theoretically, the lost, abandoned, and mislaid property and treasure-trove belong to someone not the owner of the land. We think this interpretation of the statute is supported by the brief history of the statute reported by the court in *Williams v. State*, 186 Tenn. 252, 209 S.W.2d 29 (1948).

We next turn to the real issue in the case. The law with respect to personal property of an unknown person in or upon the real property of another, found by one not the true owner nor the owner of the real property, has developed along diverse trails depending on the label placed on the property by the court. Such property may be lost, abandoned, mislaid, treasure-trove, or property embedded in the earth. 1 Am. Jur.2d *Abandoned, Lost and Unclaimed Property* §§ 1–26. The rights of the finder versus the owner of the real estate depend on the category into which the property falls. In Tennessee, so far as we have been able to discover, our cases have dealt with two of the categories. In *Deaderick v. Oulds*, 86 Tenn. 14, 5 S.W. 487 (1887), the Supreme Court held that lost property found on the premises of another could be retained by the finder. Mislaid property, on the other hand, is still in the constructive possession of the true owner and the right of possession as against all but the true owner is in the owner or occupant of

the land. *Lawrence v. State*, 20 Tenn. 220 (1839); *Deaderick v. Oulds*, 86 Tenn. 14, 5 S.W. 487 (1887).

Treasure-trove is a special category which cannot be said to be lost or mislaid because the owner's intent was obviously to put it in a safe place. The common definition of treasure-trove is "Money or coin, gold, silver, plate or bullion found hidden in the earth or other private place, the owner thereof being unknown." Black's Law Dictionary 3d Ed. 1752. The distinction between treasure-trove, lost property, and property embedded in the earth is drawn in 1 Am.Jur.2d, *Abandoned, Lost and Unclaimed Property* § 4:

> Treasure-trove carries with it the thought of antiquity; to be classed as treasure-trove, the treasure must have been hidden or concealed so long as to indicate that the owner is proably dead or unknown.

> Treasure-trove differs from lost property in that property is not lost unless the owner parted with it involuntarily, while it is essential to the character of treasure-trove that it shall have been concealed by the owner for safekeeping. Treasure-trove is also to be distinguished from a class of discovered property known as 'property embedded in the soil,' which includes anything other than gold or silver which is so buried. Thus, an aerolite, a prehistoric boat, valuable earthenware, and gold-bearing quartz found embedded in the soil under circumstances indicating that some person had placed it where it was found have all been placed in this class.

Thus, it is seen that treasure-trove, despite it being manifestly not lost property, is treated the same as lost property and the right to possession is recognized to be in the finder. Any other property embedded in the earth goes to the owner of the real property.

We are unable to find any case where Tennessee adopted the above rule with respect to treasure-trove nor can we find a North Carolina case which adopted the rule prior to the Cession Act of 1789. We do,

however, recognize the rules quoted above to be the common-law rules and the rules in effect in nearly every state that has passed on the question. However, we find the rule with respect to treasure-trove to be out of harmony with modern notions of fair play. The common-law rule of treasure-trove invites trespassers to roam at large over the property of others with their metal detecting devices and to dig wherever such devices tell them property might be found. If the discovery happens to fit the definition of treasure-trove, the trespasser may claim it as his own. To paraphrase another court: The mind refuses consent to the proposition that one may go upon the lands of another and dig up and take away anything he discovers there which does not belong to the owner of the land. *See Foster v. Fidelity Safe Deposit Co.*, 264 Mo. 89, 174 S.W. 376 (1915).

The invitation to trespassers inherent in the rule with respect to treasure-trove is repugnant to the common law rules dealing with trespassers in general. The common-law made a trespass an actionable wrong without the necessity of showing any damage therefrom. Because a trespass often involved a breach of the peace and because the law was designed to keep the peace, the common law dealt severely with trespassers. In 75 Am.Jur.2d, Trespass § 1, the rationale for the action is explained:

> The modern law of trespass can be understood only as it is seen against its historical background. Originally all types of trespass, including trespass to land, were punishable under the criminal law because the trespasser's conduct was regarded as a breach of the peace. When the criminal and civil aspects of trespass were separated, the civil action for trespass was colored by its past, and the idea that the peace of the community was put in danger by the trespasser's conduct influenced the courts' ideas of the character of the tort. Therefore, relief was granted to the plaintiff where he was not actually damaged, partly at least, as a means of discouraging disruptive influences in the community ...

[p]robably the most important factor which describes the nature of the interests protected under the law of trespass is nothing more than a feeling which a possessor has with respect to land which he holds. It is a sense of ownership; a feeling that what one owns or possesses should not be interfered with, and that it is entitled to protection through the law. This being the nature of the plaintiff's interest, it is understandable why actual damage is not an essential ingredient in the law of trespass.

█ Recognizing the validity of the idea that the discouragement of trespassers contributes to a preservation of the peace in the community, we think this state should not follow the common law rule with respect to treasure-trove. Rather, we adopt the rule suggested in the concurring opinion in *Schley v. Couch*, 155 Tex. 195, 284 S.W.2d 333 at 338 (1955) which we restate as follows:

Where property is found embedded in the soil under circumstances repelling the idea that it has been lost, the finder acquires no title thereto, for the presumption is that the possession of the article found is in the owner of the locus in quo.

The judgment of the court below is reversed and the cause is remanded to the Chancery Court of Bedford County for a new trial under the rule announced in this opinion. Tax the costs on appeal to the appellees.

TODD, P.J., and LEWIS, J., concur.